OPINION OF THE COURT
Wesley, J.
Jarrett Eck, the 21/2-year-old son of plaintiff Melissa Jean Mosher-Simons, was fatally beaten by his maternal aunt and temporary custodian, Deborah Mosher. This appeal concerns a claim, brought on Jarrett’s behalf by his mother, that a preplacement home study evaluation was inadequately performed by the County of Allegany. Because the court-ordered home study is an integral part of the judicial process, the County is entitled to judicial immunity. We therefore affirm the order of the Appellate Division dismissing the complaint.
On April 16, 1991, the Allegany County Department of Social Services (DSS) took emergency custody of then seven-month-old Jarrett after receiving a report of suspected abuse and neglect at the hands of his mother. DSS brought a neglect proceeding in Allegany County Family Court against Jarrett’s parents seeking termination of parental rights (see Social Services Law § 384-b). After the court suspended judgment for one *217 year (see Family Ct Act § 633), DSS assumed temporary custody of Jarrett and placed him in foster care. Mosher filed a custody petition with the court; Jarrett’s paternal grandmother did the same two months later. The court held a hearing in December of 1992 during which plaintiff and the child’s father admitted to permanently neglecting Jarrett. The court then ordered DSS to complete home studies of the parties requesting custody.
The home studies, which evaluated the “residential conditions, household composition, financial situation, and ability of both [parties] to provide a safe and stable environment,” were delivered to the court. The studies did not recommend a specific placement but did provide information about both potential custodians to aid in the court’s placement decision. Family Court then held a hearing on February 17, 1993 to, in the words of the Assistant County Attorney, “permanently settle the various files concerning [Jarrett] and [his] parents.”
With counsel present, the parties stipulated that the child be placed with his maternal aunt, Deborah Mosher.[1] Based on the stipulation, the court entered an order that granted Mosher custody and also assigned a caseworker to monitor Jarrett’s placement. On March 29, 1993, Family Court considered a new custody application brought by Jarrett’s former foster parents (see Social Services Law § 383). Plaintiff opposed the application and asked for sanctions, but the court instead made the Mosher placement temporary and scheduled a hearing. Tragically, Jarrett Eck died three weeks later.
Plaintiff then commenced an action against Allegany County and others in federal court seeking damages for Jarrett’s injuries and death. In response to motions for summary judgment by the County and other defendants, the District Court dismissed, with prejudice, all state and federal causes of action except for a negligent placement claim founded on the County’s alleged negligent performance of the aunt’s home study. The court reasoned that, because the caseworker’s “evaluation led directly to the placement of the [child],” plaintiffs allegations of negligence in preparing the home study extended to the placement of the child (Mosher-Simons v County of Allegany, 1997 US Dist LEXIS 16426, *25, 1997 WL 662512, *9 [WD NY, *218 Oct. 8, 1997]). Relying on Barnes v County of Nassau (108 AD2d 50 [2d Dept 1985]), the court refused to bar the negligent placement claim based on governmental immunity; however, the court later dismissed that remaining claim, declining to exercise its supplemental jurisdiction.[2] The Second Circuit affirmed (see Mosher-Simons v County of Allegany, 159 F3d 1347 [2d Cir 1998]).
Plaintiff then brought an action in Supreme Court alleging the same state law theories of negligence asserted against the County in the federal action. The County moved for summary judgment. The court ruled that res judicata precluded relitigation of the dismissed claims but refused to dismiss the negligent placement claim because the District Court decision constituted the law of the case.[3] The Appellate Division modified the court’s order and dismissed that remaining claim (288 AD2d 823 [4th Dept 2001]). Initially, the Court noted that, as an appellate court, it was not bound by the District Court decision as law of the case (see id. at 824, citing Martin v City of Cohoes, 37 NY2d 162, 165 [1975], rearg denied 37 NY2d 817 [1975]). Turning to the merits, the Court held that the County was entitled to judicial immunity because the home study was performed at the direction of the Family Court. In addition, the Court determined that the County was also entitled to governmental immunity because it “acted in a discretionary rather than a ministerial capacity when it issued the home study” (id. at 825, citing Tango v Tulevech, 61 NY2d 34, 40-42 [1983]; see also Haddock v City of New York, 75 NY2d 478, 484 [1990]). We granted plaintiffs motion for leave to appeal, and now affirm.
The only issue before us is whether summary judgment was properly granted on what the District Court categorized as plaintiffs negligent placement claim (see Mosher-Simons, 1997 US Dist LEXIS 16426, *11, 1997 WL 662512, *4). All other causes of action, mirroring those previously dismissed on the merits in the federal action, are precluded by res judicata principles (see People v Evans, 94 NY2d 499, 502 [2000], rearg denied 96 NY2d 755 [2001]). Moreover, the law of the case doc *219 trine does not dictate our review of the remaining claim as this Court is not one of “coordinate jurisdiction” in relation to the District Court (see id., at 503, citing Martin, 37 NY2d at 165 [law of the case is “a concept regulating pre-judgment rulings made by courts of coordinate jurisdiction in a single litigation”]).
The negligent placement claim is premised on an allegation in the complaint that the County “failed to * * * prepare adequate home evaluations,” which were relied upon by the court in placing Jarrett with his aunt. The home study contains no specific recommendation, however, and did not effectuate the placement. Rather, placement was court-ordered after all parties, including plaintiff’s attorney and Jarrett’s law guardian, agreed. Thus, despite prior characterization of the claim at issue here as one of negligent placement, it can only be depicted as one premised on a faulty home evaluation by the DSS caseworker.
The County asserts that plaintiff’s claim should fail because the court, not the County, placed Jarrett, and because the couft-ordered home study evaluation is cloaked in judicial immunity. According to the County, the caseworker’s acts were essential to the judicial decision-making process and the caseworker functioned as an “arm of the court.” Thus, the County asserts that, like the Family Court, it is immune from suit based on its having performed the court-ordered home study. Under these circumstances, we agree.
“Courts have recognized that it is imperative to the nature of the judicial function that Judges be free to make decisions without fear of retribution through accusations of malicious wrongdoing” (Tarter v State of New York, 68 NY2d 511, 518 [1986]; see also Antoine v Byers & Anderson, Inc., 508 US 429, 435 [1993]). Judicial immunity discourages inappropriate collateral attacks on court rulings and fosters judicial independence by protecting courts and judges from vexatious litigation. Indeed, “[m]ost judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability” (Forrester v White, 484 US 219, 227 [1988]). Allowing members of the judiciary to exercise independent judgment, without the threat of legal reprisal, is “critical to our judicial system” (Tarter, 68 NY2d at 518).
Recognizing the distinct nature of the judicial process, “judicial immunity * * * protects Judges only in the perfor *220 manee of their judicial functions” (id.). A logical extension of this premise is that “other neutrally positioned government officials, regardless of title, who are delegated judicial or quasi-judicial functions should also not be shackled with the fear of civil retribution for their acts” (id.). “[T]he common law provide [s] absolute immunity from subsequent damages liability for all persons — governmental or otherwise — who [a] re integral parts of the judicial process” (Briscoe v LaHue, 460 US 325, 335 [1983]; see also Prosser and Keeton, Torts § 132, at 1058 [5th ed] [“judicial immunity has been extended to * * * adjuncts of the judicial process”]). Notably, this extension of judicial immunity to those whose actions are an integral part of the judicial process is limited. It is circumscribed to claims arising from the performance of the specific judicially delegated function.
In this case the Family Court, whose order placed Jarrett in Mosher’s custody, is immune from a claim of negligent placement; the placement was undeniably the execution of a judicial function. In fact, plaintiff makes no attempt to raise such a claim. It follows then that the antecedent fact-gathering process necessary for the court to reach this placement decision also must be cloaked with judicial immunity. The court-ordered DSS home study was an integral part of the judicial decision-making process. The caseworker gathered and reported pertinent information to assist the court in determining an appropriate place for Jarrett to live. The information necessary for the placement decision was available only by way of evaluations that would be impracticable for the court to perform itself. Indeed, the Social Services Law recognizes the important role played by caseworkers in gathering information on behalf of the Family Court (see Social Services Law § 424 [12] [“Each child protective service shall * * * assist the family court or criminal court during all stages of the court proceeding in accordance with the purposes of this title and the family court act”]). Thus, the caseworker functioned as an extension of the court and was acting within the scope of the court’s order when he completed the study. The County is therefore entitled to judicial immunity.[4] In a slightly different context, one court has noted that “to permit [a DSS caseworker] to become ‘a lightning rod for harassing litigation aimed at judicial orders’ *221 would seriously imperil the effectiveness of state child protection schemes” (Coverdell v Department of Social & Health Servs., State of Wash., 834 F2d 758, 765 [9th Cir 1987]). Similar concerns inform our decision here.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Smith, Levine, Ciparick, Rosenblatt and Graffeo concur.
Order affirmed, with costs.

. Plaintiffs attorney specifically noted that she agreed with the stipulation, provided she could re-petition the court for expanded visitation after receiving counseling and an evaluation. The law guardian also ratified the stipulation.

. 28 USC 1367 § (c) (3) provides that “[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if * * * the district court'has dismissed all claims over which it has original jurisdiction * * *.”

. Without opposition from the County, the court also granted plaintiffs motion to amend her complaint to withdraw the causes of action brought by her individually.

. In light of this determination, we need not address whether the County also had a defense to liability for allegations of an inadequate home study evaluation or negligent placement on a theory of governmental immunity (see Haddock v City of New York, 75 NY2d 478, 484 [1990]; Tango v *221 Tulevech, 61 NY2d 34, 40-42 [1983]; but see Barnes v County of Nassau, 108 AD2d 50 [2d Dept 1985]).