■ MARK MEHLMAN, Respondent, v 592-600 UNION AVENUE CORP., Appellant. [847 NYS2d 547]—

Order, Supreme Court, Bronx County (Howard R. Silver, J.), entered on or about January 17, 2007, which granted plaintiff's motion for summary judgment on its first cause of action for specific performance, unanimously reversed, on the law, without costs, the motion denied, and, upon a search of the record, summary judgment granted to defendant dismissing the complaint. The Clerk is directed to enter judgment accordingly. Appeal from order, same court and Justice, entered September 15, 2006, which denied defendant's motion to strike plaintiff's jury demand, and order, same court (Lucy Billings, J.), entered January 23, 2006, which, to the extent appealed from, denied defendant's cross motion for summary judgment based on lack of standing, unanimously dismissed as academic, without costs.

On or about March 5, 2002, defendant seller entered into a contract to sell the property located at 592-596 Union Avenue in Bronx, New York, to plaintiff buyer, identified in the contract as "nominee for a Limited Liability company to be formed." The agreed-upon purchase price was $1,897,632.90, with a closing scheduled for May 2002 and an outside closing date of October 7, 2002.

Upon execution of the contract, buyer ordered a title report which revealed three judgments against seller amounting to more than $675,000. The title report further reflected an outstanding mortgage on the property in the sum of $550,000. Seller attempted to cure the outstanding judgments, but was able to eliminate only the largest one of approximately $450,000, leaving two judgments totaling over $200,000. Seller received at least two adjournments of the closing to resolve these title issues, and, in a July 26, 2002 letter from seller's counsel to buyer, indicated a readiness to close, now that a title insurance representative had agreed to "a two-year escrow for [the] two judgments against the [p]remises." However, the judgments were not paid prior to the closing date.

On September 10, 2002, seller wrote to buyer advising him that it had already expended the contractually required sum to eliminate the judgments against the property, and that pursuant to section 13.02 of the contract, buyer was required to exercise one of two options: either cancel the contract and receive a refund of its down payment and reimbursement of title costs or take the property subject to the title defects, with a modest credit. By letter dated September 24, 2002, buyer

"rejected" seller's letter in its entirety and unilaterally set a closing date of October 7, 2002, with time being of the essence against seller. Buyer's counsel argued that seller's July 26, 2002 letter, which acknowledged the title company's agreement to an escrow arrangement for the two unpaid judgments, had effectively amended the contract of sale to constitute *seller's* agreement to set up the escrow and close by August 2002.

On October 7, 2002, buyer's counsel appeared at the designated closing place and made a formal record that buyer was ready, willing and able to close the purchase that day, and that he was in possession of three checks totaling the required payments under the contract. The checks were identified by buyer's counsel as "bank or certified checks," but were not shown to seller's counsel or principal, who were also present. Seller's counsel refused to close, invoking section 13.02 of the contract, which, according to seller, gave buyer a choice of either terminating the contract or taking the property subject to the title defects. No closing occurred.

In October 2002, buyer commenced the instant action against seller seeking specific performance of the contract of sale and damages associated with the seller's failure to close. Seller answered and counterclaimed for an order declaring that it was entitled to retain buyer's down payment. Subsequently, both parties moved for summary judgment, which the court denied, finding triable issues as to the correct interpretation of the contract.

Following discovery, buyer moved to amend the complaint to add a cause of action for breach of contract based on seller's failure to properly cancel the contract pursuant to paragraph 7 of the contract rider, which provided that notwithstanding any inconsistent provision in the contract, seller "shall be responsible to pay monetary liens, fines, interest, and penalties in liquidated damages arising out of the violations noted or issued against the premises on or before the closing date, provided, however, that seller's liability with respect thereto shall not exceed $10,000.00 in the aggregate." Paragraph 7 further provided that if the aggregate amount of liens, fines, and penalties exceeded $10,000.00, seller could either pay such higher amount or cancel the contract by written notice to purchaser. Buyer argues that in light of seller's admitted failure to satisfy all liens prior to closing, seller should have canceled the contract pursuant to paragraph 7, and that, having failed to do so, its refusal to close constituted a default which, according to paragraph 8 of the rider, authorized the remedy of specific performance.

Seller did not oppose buyer's motion to amend, but instead cross-moved for summary judgment on the grounds that buyer lacked standing to sue and that buyer was not ready, willing and able to purchase the property since the checks presented at closing did not comply with the terms of the contract. In the first order appealed, entered January 23, 2006, the motion court granted buyer's unopposed motion to amend, but denied seller's cross motion for summary judgment. The court found that buyer had standing to sue, and that because seller's principal did not observe the checks at closing, there was insufficient evidence to establish as a matter of law that buyer was not ready, willing and able to purchase the property. The court further ruled that seller may have waived any objection to the form of payment by not objecting earlier, and, alternatively, that seller's reliance on section 13.02 as its excuse for nonperformance may have constituted an anticipatory breach, thereby obviating buyer's obligation to prove its readiness to purchase.

Seller then moved to strike buyer's jury demand. In the second order appealed, entered September 15, 2006, the court denied seller's motion to strike, finding that buyer's claim for damages for breach of contract justified a jury trial.

Finally, in June 2006, buyer again moved for summary judgment on its cause of action for specific performance based on seller's failure to properly cancel the contract pursuant to paragraph 7 of the rider. Buyer argued that paragraph 7 controlled over any conflicting provision, such as section 13.02, and that paragraph 7 required seller to either pay all "liens, fines, interest, and penalties" or cancel the contract, and in this case seller did neither.

Seller opposed the motion, arguing that buyer's reliance on paragraph 7 of the rider was misplaced, since that paragraph was limited to "liens, fines, interest, and penalties" that arose out of violations issued by government authorities, and had no application to judgments held by private parties. Seller also reiterated its argument that buyer lacked standing to sue.

In the third order appealed, entered January 17, 2007, the court granted buyer's motion for summary judgment on its claim for specific performance, apparently on the basis that seller failed to properly cancel the contract pursuant to paragraph 7 of the rider and therefore was in breach of the contract by refusing to close on October 7, 2007.

On appeal, seller argues that the motion court misinterpreted the contract by holding that paragraph 7 of the rider superseded section 13.02. Seller contends that its inability to satisfy the judgments prior to closing justified its invocation of section

13.02 and gave buyer the choice to either cancel the contract or accept the property with the title defects, and that by not choosing either course, buyer breached the contract. Seller alternatively argues that even if its invocation of section 13.02 or refusal to close could be seen as an anticipatory breach, buyer still would not be entitled to specific performance, due to its inability to demonstrate that it was ready, willing and able to close. As we agree with both arguments, we reverse and dismiss the complaint.

In support of its argument that it acted in conformity with the terms of the contract, seller relies on section 13.02, which provides, in pertinent part: "If the Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this contract . . . Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to the Maximum Expense described below) but without any other credit or liability on the part of the Seller. If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of the Seller shall be to refund the Downpayment to Purchaser and to reimburse Purchaser for the net cost of title examination . . . . Upon such refund and reimbursement, this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D (or if none is so specified, the Maximum Expense shall be one-half of one percent of the Purchase Price) to cure any title defect or to enable Seller to otherwise comply with the provisions of this contract."

As may be seen from the above, seller was perfectly within its rights in invoking section 13.02 once it determined that it had expended the "Maximum Expense" amount designated in the contract. The Maximum Expense amount established seller's maximum liability for attempting to eliminate title defects prior to closing, and once that maximum was met, section 13.02 expressly limited buyer's remedies to two options: cancel the sale and receive a refund of down payment and title costs or take the property subject to the title defects, with a maximum credit of the Maximum Expense amount, which in this case the parties agree was .5% of the purchase price, or $9,844.16. Buyer elected neither of these remedies, but instead unilaterally set a time-of-the-essence closing and demanded that seller bear the burden of establishing escrow accounts for the two outstanding

judgments. Given that section 13.02 expressly limits seller's liability to the Maximum Expense amount "without any other credit or liability on the part of the Seller," buyer's insistence that seller establish escrow accounts for these judgments was itself a breach of the agreement.

"When a contract for the sale of real property contains a clause specifically setting forth the remedies available to the buyer if the seller is unable to satisfy a stated condition, fundamental rules of contract construction and enforcement require that we limit the buyer to the remedies for which it provided in the sale contract" (*101123 LLC v Solis Realty LLC*, 23 AD3d 107, 108 [2005]). In *101123 LLC*, which also involved a contract for the sale of a building, the parties' contract expressly limited the buyer's remedies in the event the seller was unable to deliver the premises free of tenants to taking the property as is or rescinding the contract, and further precluded specific performance unless the seller willfully defaulted. When the seller did not remove a tenant and invoked the contract provision, the buyer sued for specific performance. This Court affirmed the dismissal of the complaint after trial, ruling that the contract must be enforced as written to "limit the buyer to the remedies that were specifically delineated in the sale contract" (*id.* at 112). The same result is required here.

The motion court erred in finding that paragraph 7 of the rider superseded section 13.02. The clear and unambiguous language of paragraph 7 demonstrates that it is only applicable to "liens, fines, interest, and penalties . . . arising out of the violations noted or issued against the Premises on or before the Closing Date." We reject buyer's argument that the above-mentioned liens or penalties would include a judgment against seller obtained by a private party. Such interpretation would render the phrase "arising out of the violations noted or issued against the Premises" meaningless.

In short, because seller acted within its rights pursuant to section 13.02 of the contract, it is buyer, not seller, who breached the contract by failing to cancel the contract or take the property subject to the judgments (*101123 LLC* at 112; *Maxton Bldrs. v Lo Galbo*, 68 NY2d 373, 378 [1986] [buyer bargained for limited right to cancel and failure to properly exercise it constituted a breach]). Accordingly, buyer's breach renders its complaint deficient as a matter of law, and, upon a search of the record, we grant summary judgment to seller dismissing the complaint. In light of this holding, it is unnecessary to reach seller's additional arguments concerning buyer's alleged lack of standing and invalid tender. Concur—Sullivan, J.P., Nardelli, Williams, Gonzalez and Catterson, JJ.