TIMOTHY ALBINO et al., Plaintiffs, v NEW YORK CITY HOUSING AUTHORITY, Defendant. NEW YORK CITY HOUSING AUTHORITY, Third-Party Plaintiff-Appellant, v DIMENSION MECHANICAL CORPORATION, Third-Party Defendant-Respondent, et al., Third-Party Defendant. (And a Fourth-Party Action.) NEW YORK CITY HOUSING AUTHORITY, Third Third-Party Plaintiff-Appellant, v HARLEM DOWLING WEST SIDE CENTER et al., Third Third-Party Defendants-Respondents. [912 NYS2d 27]—

Order, Supreme Court, Bronx County (Larry S. Schachner, J.), entered February 27, 2009, which granted the motions of third third-party defendants Harlem Dowling West Side Center, the City of New York, and the New York City Administration for Children's Services (ACS) to dismiss the third third-party complaint against them, denied plaintiffs' motion to sever the third third-party action as moot, and denied the New York City Housing Authority's (NYCHA) motion to unseal the Family Court files pertaining to all Family Court proceedings involving plaintiffs Carmen Albino and Timothy Albino, affirmed, without costs.

In 1997, the infant plaintiff, Timothy Albino, who is developmentally disabled and dependent on others for care, was placed in foster care with plaintiff Carmen Albino. Although Ms. Albino had been trained and certified as a foster mother by third third-party defendant Harlem Dowling, she was not instructed on bathing a special needs child. When Ms. Albino requested a home attendant for Timothy, she was told that she would get an exceptional-child level subsidy instead.

In 2000, Ms. Albino adopted Timothy, notwithstanding her prior statement to the adoption caseworker that she would not adopt the child if she did not receive a home attendant. After the adoption, ACS repeatedly declined to provide a home attendant for Timothy. In 2001 and 2002, ACS advised Ms. Albino that she could request home care by foster care workers who, at different times, assisted other foster children residing in the home.

Ms. Albino obtained a medical recommendation for "home health aide services" on June 9, 2003. On June 10, 2003, Timothy was burned by hot water after he was allegedly momentarily left unattended in the bathtub by Ms. Albino and the neighbor she hired to assist her, Juan Soler. As a result, Ms. Albino, individually and on behalf of Timothy, brought this action against NYCHA alleging defective plumbing.

In May 2008, after bringing third-party actions against Mr. Soler and plumbing contractor Dimension Mechanic Corporation, NYCHA brought the third third-party action for contribution and common-law indemnification against the City, ACS and Harlem Dowling alleging, among other things, that they negligently trained Ms. Albino and failed to provide services for Timothy, including a trained and certified home health aide, in connection with Timothy's foster care and subsequent adoption. The City and ACS moved to dismiss, arguing that NYCHA had no standing to bring against them claims which, according to

NYCHA, were "on behalf of the injured party, the infant plaintiff." Even if there was standing, those parties asserted, their determination to place Timothy in Ms. Albino's home for adoption was a discretionary act that was absolutely immune from civil liability. Furthermore, the City and ACS contended, the third third-party complaint failed to allege that the City and ACS owed plaintiffs a special duty. Harlem Dowling joined in the argument by the City and ACS that NYCHA had no standing to bring this third third-party action, and also asserted that there was no evidence that it negligently placed Timothy in Ms. Albino's care and negligently failed to remove him from her care.

The motion court granted the motions to dismiss the third third-party complaint, finding that NYCHA lacked standing to assert the claims against the City, ACS or Harlem Dowling. The court determined that NYCHA "has not suffered any injury in fact based upon the City's[,] ACS's or Harlem Dowling's conduct in this case" and that "[a]ny injury from the alleged improper conduct of ACS or Harlem Dowling runs to the plaintiff directly, not through the NYCHA."

The court correctly dismissed the third third-party complaint, but erred in doing so on the ground that NYCHA did not have standing to assert its contribution and indemnity claims. There is no "standing" issue here because a third-party plaintiff almost always has the right to seek contribution from a possible joint tortfeasor, whether the third-party plaintiff itself has suffered a redressable injury. Indeed, recognizing the issue's inapplicability, third third-party defendants City of New York and ACS, which introduced this red herring below, have abandoned that argument in their brief to this Court. It is manifestly obvious that NYCHA does not claim that the foster care system owed it a direct duty with respect to the infant plaintiff's adoption. Rather, it claims that by breaching a duty to plaintiffs, third third-party defendants "had a part in causing or augmenting the injury" for which NYCHA may have to compensate plaintiffs, and so equity dictates that they pay a pro rata portion of any damages awarded (*Raquet v Braun*, 90 NY2d 177, 183 [1997]). This is not a question of "standing" but of a defendant's ability to invoke rights explicitly granted by article 14 of the CPLR.

In any event, there is no need to rule on the issue of whether NYCHA has "standing" to assert that it was "injured" by the third third-party defendants' alleged failure to provide adequate services to the child's foster mother, because the third third-party defendants have no liability. In *McLean v City of New*

*York* (12 NY3d 194, 203 [2009]), the Court of Appeals held that "[g]overnment action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general" (*see also Dinardo v City of New York*, 13 NY3d 872, 874 [2009]). In *Valdez v City of New York* (74 AD3d 76, 78 [2010]), this Court stated that "both *McLean* and *Dinardo* support the position that the starting point of any analysis as to governmental liability is whether a special relationship existed; and not whether the governmental action is ministerial or discretionary."*

A special relationship between a claimant and a municipality " 'can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation' " (*McLean*, 12 NY3d at 199, quoting *Pelaez v Seide*, 2 NY3d 186, 199-200 [2004]).

Although the City and ACS were statutorily obligated to provide postadoption services for Timothy at the time of his injury (*see* 18 NYCRR 421.8 [h] [2]), " '[t]o form a special relationship through breach of a statutory duty, the governing statute must authorize a private right of action' " which " 'may be fairly implied when (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the governing statute; and (3) to do so would be consistent with the legislative scheme. If one of these prerequisites is lacking, the claim will fail' " (*McLean*, 12 NY3d at 200 [citations omitted], quoting *Pelaez*, 2 NY3d at 200). To the extent NYCHA alleges that the City and ACS violated their statutory obligation to provide postadoption services, that claim must fail because 18 NYCRR 421.8, promulgated in part pursuant to the authority of Social Services Law § 372-b (adoption services), does not authorize a private right of action. It is fair to infer that the Legislature considered carefully the best means for enforcing the provisions of Social Services Law § 372-b and would have

---

* In *Dinardo*, the Court of Appeals stated that there was "no occasion" to decide whether discretionary negligence could ever lead to liability because "even assuming the school officials' actions in this case were ministerial," there was no special relationship between the Board of Education and the plaintiff (13 NY3d at 874; *see also* 13 NY3d at 876-877 [Lippman, Ch. J., concurring] ["the broad immunity recognized for discretionary acts should not extend to situations where a special relationship is present"]).

created a private right of action against erring government agencies if it found it prudent to do so (*see McLean*, 12 NY3d at 200; *see also Mark G. v Sabol*, 93 NY2d 710 [1999]).

Nor did the City and ACS voluntarily assume a special duty. A special duty may arise from a municipality voluntarily assuming a duty where there is " '(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking' " (*McLean*, 12 NY3d at 201, quoting *Cuffy v City of New York*, 69 NY2d 255, 260 [1987]). The record does not show that the third-party defendants assumed, through promises or actions, an affirmative duty to act on plaintiffs' behalf to provide a certified home attendant. It cannot be said that anything the third third-party defendants did or said caused plaintiffs to be "lulled . . . into a false sense of security . . . induc[ing] [her] either to relax [her] own vigilance or to forego other available avenues of protection" (*Cuffy*, 69 NY2d at 261). Nor does the record demonstrate that the City or ACS assumed positive direction and control in the face of a known, blatant and dangerous safety violation. NYCHA's reliance on pre-adoption progress notes which state that correspondence was received "indicating Court Mandated Home Health Services for Timothy" does not require otherwise.

NYCHA's contention that it should be allowed further discovery to establish the existence of a special duty is unavailing. As this Court previously held, a party "will not be allowed to use pretrial discovery as a fishing expedition when they cannot set forth a reliable factual basis for what amounts to, at best, mere suspicions" (*Devore v Pfizer Inc.*, 58 AD3d 138, 144 [2008], *lv denied* 12 NY3d 703 [2009]).

To the extent NYCHA alleges that the third third-party defendants were negligent in investigating instances of child abuse, that claim is not actionable due to the statutory immunity provided in Social Services Law § 419 (*see Lamot v City of New York*, 62 AD3d 572 [2009]). To the extent NYCHA alleges that the third third-party defendants negligently evaluated, assessed, approved or permitted the foster-care and adoption arrangements, those claims are subject to judicial immunity, which extends to ACS and Harlem Dowling, child protective service agencies that assisted the court in effecting the placement (*see Mosher-Simons v County of Allegany*, 99 NY2d 214, 219-220 [2002]).

Even if there were grounds for a special duty, NYCHA has not established that the third third-party defendants had sufficiently specific knowledge or notice of the dangerous conduct which caused injury (*see Simpson v County of Dutchess*, 35 AD3d 712, 713 [2006]). The scalding hot bath water was an intervening act or event that is divorced from and not the foreseeable risk associated with the third third-party defendants' alleged negligence (*see generally Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]). Any conclusion that Timothy's injuries would not have occurred had Ms. Albino been properly trained or a certified aide been provided is based on mere speculation. The momentary inattention of both Ms. Albino and Soler were not acts that should have been foreseeable by the third third-party defendants in the exercise of reasonable care (*see Ogletree v Rush Realty Assoc., LLC*, 29 AD3d 875, 876 [2006]; *Charles v City of New York*, 272 AD2d 287 [2000], *lv denied* 95 NY2d 768 [2000]). Further, any duty of Harlem Dowling terminated when the court sanctioned a legal adoption three years prior to the incident (Social Services Law § 383 [2]), and the postadoption requests for a home health aide were not directed to Harlem Dowling.

Even if, as the concurrence contends, a legitimate standing issue existed here, it would be imprudent to reach it, having determined that NYCHA's third-party claims fail on the merits. This Court has consistently avoided determining the issue of standing once it has determined that no liability exists in any event (*see e.g. Mehlman v 592-600 Union Ave. Corp.*, 46 AD3d 338, 343 [2007]; *Herald Sq. S. Civic Assn. v Consolidated Edison Co. of N.Y.*, 307 AD2d 213 [2003]). Indeed, any conclusion here regarding whether NYCHA does or does not have standing would be nothing more than dicta. Further, to treat the basic contribution principle at issue here as one of "standing" is likely to cause unnecessary confusion.

"It is a fundamental principle of our jurisprudence that the power of a court to declare the law only arises out of, and is limited to, determining the rights of persons which are actually controverted in a particular case pending before the tribunal. This principle, which forbids courts to pass on academic, hypothetical, moot, or otherwise abstract questions, is founded both in constitutional separation-of-powers doctrine, and in methodological strictures which inhere in the decisional process of a common-law judiciary" (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 713-714 [1980] [citations omitted]). By considering, and then deciding, the "standing" issue in this case, we would ignore this well-settled jurisprudential tenet. Finally, given that the

third third-party action was properly dismissed, the motion court properly denied plaintiffs' motion to sever the third third-party action as moot. The court also providently exercised its discretion in denying NYCHA's motion to unseal plaintiffs' Family Court file. NYCHA has failed to show good cause for inspection or disclosure of plaintiffs' Family Court records (*see* Family Ct Act § 166; Domestic Relations Law § 114). Concur—Tom, J.P., Mazzarelli, and DeGrasse, JJ.

Andrias and Saxe, JJ., concur in a memorandum by Andrias, J., as follows: Plaintiffs sued the New York City Housing Authority (NYCHA) to recover for personal injuries suffered by the developmentally disabled infant-plaintiff, Timothy Albino, who was burned by hot water after he was allegedly left momentarily unattended in the bathtub by plaintiff Carmen Albino and the neighbor she hired to assist her. We all agree that third third-party defendants, Harlem Dowling West Side Center, the City of New York, and the New York City Administration for Children's Services, are entitled to dismissal, on the merits, of NYCHA's claims for contribution and common-law indemnification against them. Having determined the merits, the majority believes that it would be imprudent to reach the issue of whether NYCHA had standing to bring those claims in the first instance and that to treat the basic contribution issue here as one of "standing" is likely to cause "unnecessary confusion." I disagree, and therefore concur separately.

"Standing to sue is critical to the proper functioning of the judicial system. It is a threshold issue" (*Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 812 [2003], *cert denied* 540 US 1017 [2003]). Here, unlike the cases on which the majority relies, *Mehlman v 592-600 Union Ave. Corp.* (46 AD3d 338 [2007]) and *Herald Sq. S. Civic Assn. v Consolidated Edison Co. of N.Y.* (307 AD2d 213 [2003]), the motion court, citing *Lujan v Defenders of Wildlife* (504 US 555 [1992]), based its decision dismissing the third third-party complaint on a finding that NYCHA lacked standing to bring the third-party claims. In its appeal, NYCHA challenges that finding. In its opposing brief, Harlem Dowling continues to argue that NYCHA lacked standing to commence the third third-party action against it. Thus, the issue is squarely before us and should be addressed.

The motion court erred when it dismissed the third third-party complaint on the ground that NYCHA did not have standing to assert its contribution and indemnity claims because any injury from the third third-party defendants' alleged improper conduct "runs to the plaintiff directly, not through the NYCHA." The critical requirement for contribution under *Dole*

*v Dow Chem. Co.* (30 NY2d 143 [1972]), now codified in CPLR 1401, is "that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought" (*Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.*, 71 NY2d 599, 603 [1988]; *Nelson v Chelsea GCA Realty, Inc.*, 18 AD3d 838, 840-841 [2005]). The claim may be based on a breach of a duty owed to either the plaintiff or the defendant (*see Sommer v Federal Signal Corp.*, 79 NY2d 540 [1992]; *Duenas v North Harbor Co.*, 278 AD2d 193 [2000]), and will lie whether or not the culpable parties are allegedly liable for the injury under the same or different theories (*see Raquet v Braun*, 90 NY2d 177 [1997]), "and whether or not the party from whom contribution is sought is allegedly responsible for the injury as a concurrent, successive, independent, alternative, or even intentional tort-feasor" (*Nassau Roofing & Sheet Metal Co.*, 71 NY2d at 603; *see also Schauer v Joyce*, 54 NY2d 1 [1981]).

"Similarly, the key element of a common-law cause of action for indemnification" is a duty owed from the indemnitor to the indemnitee arising from "the principle that 'every one is responsible for the consequences of his own negligence, and if another person has been compelled . . . to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him' " (*Raquet v Braun*, 90 NY2d at 183, quoting *Oceanic Steam Nav. Co. [Ltd.] v Compania Transatlantica Espanola*, 134 NY 461, 468 [1892]).

In the third third-party action, NYCHA alleges that a breach of duty by the third third-party defendants to plaintiffs contributed in whole or in part to Timothy being scalded in the bathtub in that the presence of a qualified home aide may have prevented the accident, which allegedly resulted from Timothy's movement of the hot water lever. The fact that plaintiffs' theory of recovery (defective plumbing) differs from NYCHA's does not deprive NYCHA of standing where both the plaintiffs and NYCHA are seeking to recover for the same personal injury to Timothy. NYCHA is not seeking to contest the underlying foster placement or adoption.