OPINION OF THE COURT
William J. Giacomo, J.
Factual and Procedural Background
On May 31, 2005, defendant County of Westchester received an anonymous call that, inter alia, Elijah Santana, born on August 12, 2002, and David Maldonado, Jr., born on November 20, 2003, were being neglected by their parents/guardians, David Maldonado, Sr. and Luz Arroyo. Emergency workers arrived at the home within 60 minutes of the anonymous call and determined that the children were in no imminent danger. The following day, June 1, 2005, the caseworker assigned to the case visited the home and again found that the children were not in imminent danger. Plaintiff does not challenge the findings of either the emergency workers or the caseworker. Nor does she claim that the children should have been removed from the home.
On July 29, 2005, David Maldonado, Sr., high on drugs, went into the bathroom of his apartment, turned on the hot water, returned to another part of the home and passed out. There is no evidence before the court indicating Luz Arroyo’s whereabouts during this incident. During this time, the children were left unattended and became locked in the bathroom while hot water was running. Sometime later, David Maldonado regained consciousness and retrieved the boys from the bathroom. The boys ultimately died from the severe injuries they sustained as a result of being subjected to scalding hot water and scalding hot steam.
Plaintiff, an aunt of the boys, is the administratrix of the estates of Elijah Santana and David Maldonado, Jr., and commenced this action against the County seeking damages for the County’s failure to do a proper investigation of the allegations of child neglect it received on May 31, 2005 via the anonymous phone call. However, plaintiff does not challenge the findings of *987 the emergency workers regarding the condition of the children on May 31, 2005 nor does she challenge the findings regarding the condition of the children on June 1, 2005. Further, plaintiff does not allege that the children should have been removed from the home on either May 31, 2005 or June 1, 2005 or anytime thereafter.
In this case, plaintiffs theory of liability rests solely on her allegation that the County failed to do a proper investigation of the family. According to plaintiff, if the County had performed a proper investigation it may have discovered evidence of neglect which may have resulted in actions by the County which may have prevented the deaths of these very young children.
Immediately before commencing the trial and taking of testimony, the County moved to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action. In support of its motion, the County argues that plaintiffs claim that the County failed to satisfy its obligation to protect the children pursuant to the mandates of section 411 of the Social Services Law is not actionable as a private action for money damages. Section 411 is part of title 6 of article 6 of the Social Services Law. The County argues that in Mark G. v Sabol (93 NY2d 710, 721-722 [1999]), the Court of Appeals expressly held that there is no private right of action for money damages under title 6 of article 6 of the Social Services Law. (See also Albino v New York City Hous. Auth., 78 AD3d 485, 488-489 [1st Dept 2010]; Lamot v City of New York, 62 AD3d 572 [1st Dept 2009].)
In opposition to this motion, plaintiff argues that she does not seek to assert a private right of action under the Social Services Law. Rather, she seeks to assert a cause of action in tort for money damages for the County’s failure to conduct an investigation into the subject report (the anonymous call) of child neglect or once having commenced the investigation it was done in a grossly negligent manner or with willful misconduct. Plaintiff argues that Mark G. does not stand for the proposition as claimed by the County. Rather, according to plaintiff, Mark G. holds that there is no private right of action against Child Protective Services (CPS) for its failure to adopt a plan dealing with reports of suspected child abuse and neglect. According to plaintiff, Mark G. does not prohibit a private right of action where a plan has been adopted and implemented by the County, as is the case here, and the County employees “utterly and completely failed to carry out” that plan. Plaintiff argues that once the County adopted a set of guidelines regarding how to *988 conduct an investigation into a report of child abuse and neglect, it has a duty to conduct that investigation properly.
Plaintiff argues that the legislative scheme behind Social Services Law § 411 has been declared to be:
“Abused and maltreated children in this state are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment. It is the purpose of this [law] to encourage more complete reporting of suspected child abuse and maltreatment and to establish in each county of the state a child protective service capable of investigating such reports swiftly and competently and capable of providing protection for the child or children from further abuse or maltreatment and rehabilitative services for the child or children and parents involved.”
Therefore, plaintiff argues that “a judicial holding that negates any incentive for a CPS worker to carry out the legislative intent or for his/her supervisor to ensure that is carried out simply cannot be the law.”
During oral argument on this motion before the court, plaintiff also argued that Social Services Law § 419 implicitly permits a private right of action against the County for its failure to carry out a proper investigation. Social Services Law § 419 provides:
“Any person, official, or institution participating in good faith in the providing of a service pursuant to section four hundred twenty-four of this title, the making of a report, the taking of photographs, the removal or keeping of a child pursuant to this title, or the disclosure of child protective services information in compliance with sections twenty, four hundred twenty-two and four hundred twenty-two-a of this chapter shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions. For the purpose of any proceeding, civil or criminal, the good faith of any such person, official, or institution required to report cases of child abuse or maltreatment or providing a service pursuant to section four hundred twenty-four or the disclosure of child protective services information in compliance with sections twenty, four hundred twenty-two and four hundred twenty-two-a of this chapter shall be presumed, *989 provided such person, official or institution was acting in discharge of their duties and within the scope of their employment, and that such liability did not result from the willful misconduct or gross negligence of such person, official or institution.”
It is plaintiffs argument that if this statute grants immunity for good faith participation in providing services pursuant to Social Services Law § 424, and there is no immunity for actions of willful misconduct or gross negligence in providing services pursuant to Social Services Law § 424, then a private right of action for money damages must exist when there are allegations of willful misconduct and gross negligence. Here, plaintiff argues that the County’s failure to conduct a proper investigation of the anonymous report of child abuse is tantamount to willful misconduct and gross negligence. Thus, her action is viable.
Discussion
As an initial matter, the court addresses plaintiffs contention, raised during oral argument, that the defense of failure to state a cause of action was not asserted in defendant’s answer and, therefore, that defense presumably has been waived. Regardless of what was pleaded in defendant’s answer, CPLR 3211 (e) provides, in relevant part:
“Any objection or defense based upon a ground set forth in paragraphs one, three, four, five and six of subdivision (a) is waived unless raised either by such motion or in the responsive pleading. A motion based upon a ground specified in paragraph two, seven or ten of subdivision (a) may be made at any subsequent time or in a later pleading, if one is permitted” (emphasis added).
Therefore, contrary to plaintiffs argument, the County’s motion is timely. The court will now address the merits of the County’s motion.
A cause of action sounding in negligence requires the following elements: (1) the existence of a duty owing by the defendant to the plaintiff; (2) defendant’s failure to discharge that duty; and (3) injury to plaintiff proximately resulting from such failure (see Stukas v Streiter, 83 AD3d 18 [2d Dept 2011]).
During oral argument the court repeatedly asked plaintiff what formed the basis for the duty the County allegedly owed to Elijah Santana and David Maldonado, Jr. as there is no common-law duty upon the County to investigate allegations of child abuse or neglect. Plaintiffs counsel provided the same answer *990 each time he was questioned by the court, to wit, the County’s duty to Elijah Santana and David Maldonado, Jr. arises from title 6 of article 6 of the Social Services Law. Plaintiff argues, however, that while the duty may arise from title 6 of article 6 of the Social Services Law there exists a common-law duty of the County to carry out its investigations into child abuse or neglect in a nonnegligent manner. While plaintiffs argument is creative, it cannot negate the holding of the Court of Appeals in Mark G. v Sobol (93 NY2d 710, 721-722 [1999]).
In Mark G., four similar actions were asserted against New York City child welfare officials by plaintiffs who were dependent on defendants’ child welfare system. In these actions plaintiffs alleged that they suffered abuse or neglect in their homes or foster homes, which defendant should have prevented. Plaintiffs made claims for money damages under two distinct titles of this law: title 4 of article 6 (“Preventive Services for Children and Their Families”) and title 6 of article 6 (“Child Protective Services”).
In holding that plaintiffs had no claims for money damages under titles 4 and 6 of article 6 of the Social Services Law, the Court of Appeals stated, in relevant part:
“Plaintiffs assert an implied private right of action for money damages for defendants’ alleged violations of Social Services Law § 424. They rely on the above-quoted immunity provision of Social Services Law § 419 to support their contention that such an action exists for a failure to comply with the provisions of title 6, including Social Services Law § 424. “Section 419’s legislative history, however, reveals that it was intended to provide immunity only with respect to civil or criminal liability that would otherwise result from acts taken by persons, officials or institutions in a good faith effort to comply with specific provisions of the Social Services Law (see, Straton v Orange County Dept. of Social Servs., 217 AD2d 576, 577; Dagan v Brookdale Hosp. Med. Ctr., 202 AD2d 385). There is no indication that section 419 was intended to apply to failures to provide the services required by the Social Services Law.
“Indeed, the Legislature specifically created a private right of action in the very next section. Social Services Law § 420 provides for criminal and civil liability for the willful failure of persons, officials or institutions required by title 6 to report *991 cases of ‘suspected child abuse or maltreatment.’ If the Legislature had intended for liability to attach for failures to comply with other provisions of title 6, it would likely have arranged for it as well.
“The enforcement mechanisms of title 6 have not escaped legislative review. In fact, the Legislature’s subsequent amendments to the enforcement scheme of title 6 evinced an emphasis on funding mechanisms and the development of performance standards by the State Department of Social Services (see, L 1988, ch 707; L 1995, ch 83, §§ 229, 231; L 1998, ch 58, pt C, § 87; see also, Mem of State Executive Dept, 1988 McKinney’s Session Laws of NY, at 2138-2140). The Legislature specifically concentrated on the statutory scheme’s enforcement provisions, which, except for the unique motivations that underlie Social Services Law § 420, have never included private rights of action for money damages. In sum, we conclude that a private right of action for money damages cannot be fairly implied from title 6 of the Social Services Law (see, Sheehy v Big Flats Community Day, 73 NY2d, at 633, supra).” (Mark G., 93 NY2d at 721-723.)
Thus, it is clear from the Court of Appeals holding in Mark G., plaintiffs claims must be dismissed as there is no private right of action for money damages for claims made pursuant to title 6 of article 6 of the Social Services Law.
Plaintiff argues, however, that Mark G. should not be read so expansively as to apply to the facts of this case. Plaintiff argues that in Mark G., plaintiffs’ claims were based upon defendant’s failure to “promulgate a plan mandated by Social Services Law § 409.” Plaintiff argues that this feature distinguishes Mark G. from this case because here the County promulgated certain County-specific protocols regarding the investigation of a report of suspected neglect, and these protocols must be properly complied with when a caseworker investigates a report of suspected child neglect.
However, plaintiffs argument is without merit. In McLean v City of New York (12 NY3d 194 [2009]), the Court of Appeals read its holding in Mark G. expansively and found that in the absence of a statutory provision permitting a private right of action, such as Social Services Law § 420, there is no private right of action for claims made pursuant to title 6 of article 6 of the Social Services Law.
*992 In McLean, the Court of Appeals held that plaintiff, whose infant daughter was injured while being cared for at a city-registered family day care home, failed to state a cause of action against defendant City, even though it renewed the home’s registration despite substantiated complaints about the home and placed the home on a list of registered day care providers furnished to plaintiff. The Court of Appeals expressly stated:
“Section 390 [of the Social Services Law] is a detailed statute, with 13 subdivisions and many more subparts, occupying 10 pages of McKinney’s Consolidated Laws. It specifies which child care providers shall be licensed and which only registered (Social Services Law § 390 [2] [a]-[c]); sets out some prerequisites for registration (id. § 390 [2] [d] [ii] [B]); requires OCFS [Office of Children and Family Services] to establish, by regulation, requirements for licensed and registered providers (id. § 390 [2-a]); provides for inspections and investigations (id. § 390 [3] [a], [d], [e] [iii]; [4] [a]); requires certain information to be available to the public (id. § 390 [8]); authorizes OCFS to prevent noncompliant providers from caring for children (id. § 390 [3] [e] [ii]); provides for denial, suspension and revocation of licenses and registrations for violations of law (id. § 390 [10]); and requires OCFS to establish civil penalties for such violations (id. § 390 [11]). Social Services Law § 389 (1) imposes criminal liability for willful violations of the provisions of the Social Services Law, including section 390. But there is no statutory provision for governmental tort liability. It is fair to infer that the Legislature considered carefully the best means for enforcing the provisions of Social Services Law § 390, and would have created a private right of action against erring government agencies if it found it wise to do so. This is not a case where the Legislature has simply prohibited or required certain conduct, and left the mechanism of enforcement to the courts (see e.g. Negrin v Norwest Mtge., 263 AD2d 39, 47-48 [2d Dept 1999]).
“We addressed a similar issue in Mark G. v Sabol (93 NY2d 710 [1999]). The plaintiffs there, children alleging that they had suffered abuse or neglect in the foster homes where they had been placed by New York City child welfare officials, sought recov *993 ery from the City, relying on provisions of the Social Services Law designed to protect foster children and to prevent child abuse generally. Emphasizing the detailed, comprehensive nature of the statutes the plaintiffs relied on, we rejected their claim that those statutes implied a private right of action. ‘[I]t would be inappropriate,’ we said, ‘for us to find another enforcement mechanism beyond the statute’s already “comprehensive” scheme. . . . Considering that the statute gives no hint of any private enforcement remedy for money damages, we will not impute one to the lawmakers’ (93 NY2d at 720-721). We reach a like conclusion here.” (McLean, 12 NY3d at 200-201 [emphasis supplied].)
In McLean the Court of Appeals acknowledged that this rule of law can have seemingly unfair results, by stating in relevant part: “[This] well settled rule of law denies recovery in cases like this, and that rule, by its nature, bars recovery even where a government blunder results in injury to people deserving of the government’s protection.” (Id. at 204.)
The Court of Appeals went on to explain why such a seemingly unfair rule of law is necessary:
“The rationale of the rule, as we explained in Laratro (8 NY3d at 82), is that exposing municipalities to tort liability would be likely to render them less, not more, effective in protecting their citizens. Lawsuits, as we said in Pelaez (2 NY3d at 201), are not the only way of dealing with governmental failure — and might even impel governments to withdraw or reduce their protective services. In Lauer (95 NY2d at 101), we quoted our warning in Steitz v City of Beacon (295 NY 51, 55 [1945]) that a ‘crushing burden’ should not be imposed on a governmental body ‘in the absence of [statutory] language clearly designed to have that effect.’ ” (Id. at 204.)
Even if this court were to find that plaintiff has a private right of action against the County, which it expressly does not, any action or inaction of the caseworker done in furtherance of investigating the report of suspected neglect of Elijah Santana and David Maldonado, Jr. is a discretionary act and cannot form the basis for liability. (See Lauer v City of New York, 95 NY2d 95, 99 [2000] [“A public employee’s discretionary acts — meaning conduct involving the exercise of reasoned judgment — may not result in the municipality’s liability even when the conduct is negligent”]; Tango v Tulevech, 61 NY2d 34 [1983].)
*994 With respect to plaintiffs argument that because Social Services Law § 419 grants immunity for good faith participation in providing services pursuant to Social Services Law § 424, and there is no immunity for actions of willful misconduct or gross negligence in providing services pursuant to Social Services Law § 424, then a private right of action for money damages must exist, the court finds it also is without merit.
It is clear that the purpose behind the enactment of title 6 of article 6 of the Social Services Law was “to encourage more complete reporting of suspected child abuse and maltreatment” (Social Services Law § 411). In furtherance of this purpose, the Legislature enacted Social Services Law § 419 which expressly provides immunity to those people or entities who report or provide services based upon a report of child abuse or neglect. In furtherance of the goal of encouraging such reporting, the Legislature enacted Social Services Law § 420 which expressly allows a private cause of action for money damages upon the failure of any person, official or institution required by title 6 to report a case of suspected child abuse or maltreatment. (See Social Services Law § 420 [2].)
It is clear that Social Services Law §§ 419 and 420 are complementary. To “encourage” reporting of suspected child abuse or neglect immunity is granted in section 419 when a party, in good faith, reports suspected abuse or neglect because there are criminal and civil penalties for the failure to report suspected abuse or neglect under section 420. It is also clear that with the exception of Social Services Law § 420, the Legislature has declined to grant any other private right of action for money damages. This court refuses to find an “implicit” private right of action, as asserted by the plaintiff, which the Legislature has not granted.
Based upon the foregoing, défendant’s motion to dismiss the complaint is granted.