■ RICHARD M. METZ, as Personal Representative of the Estate of MARY HELEN METZ, Deceased, et al., Respondents-Appellants, v STATE OF NEW YORK, Appellant-Respondent. (And Six Other Related Claims.) [927 NYS2d 201]—

Stein, J.

In 2005, the Ethan Allen, a tour boat and public vessel, capsized and sank on Lake George while carrying 47 passengers and one crew member. Tragically, 20 passengers died and numerous others suffered severe personal injuries as a result of the accident. The Ethan Allen had been inspected annually by inspectors appointed by the Commissioner of the New York State Office of Parks, Recreation and Historic Preservation (hereinafter OPRHP). A certificate of inspection was issued after each inspection setting forth, among other things, the maximum number of passengers that could be safely transported on the vessel. Since the Ethan Allen was first inspected when it entered New York State in 1979, the maximum number of passengers permitted was fixed at 48. Following an investigation into the 2005 accident, the National Transportation Safety Board (hereinafter NTSB) concluded that the probable cause was insufficient stability of the vessel due to carrying 48 passengers, rather than 14, which the NTSB determined should have been the maximum permitted.

Claimants, individuals who were injured and personal representatives of those who died as a result of the accident, commenced the instant claims asserting, among other things, that defendant was negligent in certifying the Ethan Allen to carry

more than 14 passengers. After defendant answered the claims, claimants moved to dismiss defendant's affirmative defense of sovereign immunity pursuant to CPLR 3211 (b) and defendant cross-moved for summary judgment dismissing the claims based on its claimed entitlement to such immunity. The Court of Claims denied both motions and these cross appeals ensued.

We now modify and grant claimants' motion. As the movant for summary judgment, defendant bore the initial burden of demonstrating its entitlement to sovereign immunity as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). First, defendant was required to establish that, in inspecting the Ethan Allen, it was acting in a governmental, rather than a purely proprietary, manner; if the latter, defendant would be subject to the same tort liability as any nongovernmental entity (*see Lemery v Village of Cambridge*, 290 AD2d 765, 766 [2002]). A government entity acts in a propriety capacity when the "governmental activities essentially substitute for or supplement 'traditionally private enterprises' " (*Sebastian v State of New York*, 93 NY2d 790, 793 [1999], quoting *Riss v City of New York*, 22 NY2d 579, 581 [1968]). "To determine where in the continuum of activity between proprietary and governmental responsibilities the challenged public action falls, we must examine the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred" (*Balsam v Delma Eng'g Corp.*, 90 NY2d 966, 967-968 [1997] [internal quotation marks and citation omitted]; *accord St. Andrew v O'Brien*, 45 AD3d 1024, 1027 [2007], *lv dismissed and denied* 10 NY3d 929 [2008]).

As relevant here, defendant established that the Commissioner of OPRHP is authorized to appoint one or more inspectors to perform safety inspections of public vessels that operate on navigable waters within the state and issue certificates of inspection to such vessels (*see* Navigation Law §§ 12, 13). The duties of such inspectors include an annual inspection to, among other things, fix the number of passengers that may be transported on the vessel (*see* Navigation Law § 13). In addition, defendant offered the affidavits and deposition testimony of several of the inspectors responsible for inspecting the Ethan Allen, including the current director of the Marine Services Bureau of OPRHP, which established that defendant does not own, operate or maintain the Ethan Allen. In our view, defendant met its initial burden of demonstrating that the inspection and certification of public vessels in general, and the Ethan Allen in particular, is a classic governmental function inasmuch as it is a regulatory activity undertaken for the protection of the

public at large (*see Balsam v Delma Eng'g Corp.*, 90 NY2d at 968). Thus, the burden shifted to claimants to raise a triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d at 324).

In opposition to defendant's cross motion, claimants offer no evidence to refute the foregoing assertions. Moreover, we are not persuaded by their argument that defendant's inspection duties have displaced or supplemented traditionally private enterprises (*see Balsam v Delma Eng'g Corp.*, 90 NY2d at 968; *Miller v State of New York*, 62 NY2d 506, 512 [1984]). Thus, having concluded that defendant proved as a matter of law that it was acting in a governmental capacity in inspecting and fixing the number of allowable passengers on the Ethan Allen, we must next determine whether defendant has similarly established that such actions were discretionary in nature.

Governmental immunity protects defendant from liability for the injurious consequences of official action "when [that] action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial" (*Haddock v City of New York*, 75 NY2d 478, 484 [1990]). Consequently, "[g]overnment action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to [the claimants], apart from any duty to the public in general" (*McLean v City of New York*, 12 NY3d 194, 203 [2009]; *see Haddock v City of New York*, 75 NY2d at 484). It is well settled that " 'discretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result' " (*Haddock v City of New York*, 75 NY2d at 484, quoting *Tango v Tulevech*, 61 NY2d 34, 41 [1983]; *accord Lewis v State of New York*, 68 AD3d 1513, 1514 [2009]).

Here, the deposition testimony of the inspectors who had inspected the Ethan Allen established that they had discretion, during the course of an inspection, to exercise independent judgment and consider the circumstances of each vessel when determining whether the vessel was safe to operate. Specifically, the inspectors testified that they could make a capacity determination based on the manufacturer's capacity plate or recommendations or on the number fixed by the United States Coast Guard. Although they were generally trained to rely on the prior year's capacity determination, they could have required the performance of a stability test, contacted a naval architect or requested relevant information from the manufacturer or owner if they deemed it necessary in order to establish capacity, particularly where there had been repairs or modifications to

the vessel. In fact, stability tests and/or structural surveys had been directed by inspectors with regard to other vessels in the past. In addition, inspectors had the authority to "pull" a certificate of inspection if deficiencies from prior inspections had not been corrected or if an owner failed to comply with a directive. This evidence was sufficient to meet defendant's initial burden of demonstrating that the duties of inspecting and certifying the number of passengers allowed on the Ethan Allen involve discretionary acts.

In opposition, claimants argue that, even if the inspectors theoretically had discretionary authority with regard to fixing the number of passengers who could safely travel on the Ethan Allen, they did not actually exercise such discretion and, therefore, were not entitled to immunity for their actions.[1] Indeed, it is well settled that, where a government actor is entrusted with discretionary authority, but fails to exercise any discretion in carrying out that authority, defendant will not be entitled to governmental immunity from liability (see *Mon v City of New York*, 78 NY2d 309, 313 [1991]; *Haddock v City of New York*, 75 NY2d at 485). We agree with the determination of the Court of Claims that defendant failed to show that it exercised its discretion here.

When the Ethan Allen was initially brought to New York, the certification of inspection previously completed by the United States Coast Guard fixed the maximum number of allowable passengers who could safely travel simultaneously on the vessel at 48. That same year, defendant also fixed the passenger capacity at 48.[2] The inspectors testified that, in the subsequent years in which they inspected the vessel, although they could have taken various actions to review that determination, they relied—in accordance with their custom and policy—on the number provided on the previous year's certificate of inspection as to the maximum passenger capacity. This practice apparently

---

**1.** To the extent that claimants contend that defendant's acts were ministerial, they would not be entitled to proceed against defendant on that basis in any event, since they have failed to demonstrate that defendant owed them any special duty (see *McLean v City of New York*, 12 NY3d at 199; *O'Connor v City of New York*, 58 NY2d 184, 189-191 [1983]; *see generally Dinardo v City of New York*, 13 NY3d 872, 874 [2009]; *Johns v Village of Potsdam*, 92 AD2d 660, 660 [1983]).

**2.** The deposition testimony of the inspectors who had inspected the Ethan Allen failed to reveal with any certainty how defendant arrived at that number. However, they uniformly testified that it was their custom and practice to determine the maximum number of passengers based upon the number certified by the Coast Guard or on the manufacturer's capacity plate, unless such information was unavailable or specific circumstances—such as a significant modification to the vessel—warranted a different determination.

continued notwithstanding a substantial modification to the Ethan Allen in 1989.[3] Defendant has not submitted any evidence that its inspectors ever independently verified the appropriate number of passengers who could safely travel on the vessel or engaged in any exercise of reasoned judgment to determine whether such verification was necessary or appropriate. Accordingly, defendant has not demonstrated its entitlement to judgment in its favor as a matter of law. Such "[f]ailure to make such prima facie showing requires a denial of the [cross] motion, regardless of the sufficiency of the opposing papers" (*Alvarez v Prospect Hosp.*, 68 NY2d at 324).

Conversely, on their motion to dismiss defendant's affirmative defense of sovereign immunity, claimants were required to establish that it is without merit as a matter of law (*see* CPLR 3211 [b]; *Greco v Christoffersen*, 70 AD3d 769, 771 [2010]). Based upon the foregoing analysis, it was therefore incumbent upon claimants to demonstrate that defendant could not prevail upon the argument that its inspectors actually exercised their discretion in determining the passenger capacity of the Ethan Allen. After a careful review of the record, deeming all of defendant's allegations to be true (*see Capital Tel. Co. v Motorola Communications & Elecs.*, 208 AD2d 1150, 1150 [1994]) and giving defendant "the benefit of every reasonable inference" (*Greco v Christoffersen*, 70 AD3d at 771), we are unable to glean any proof that the inspectors exercised their discretion here. Accordingly, there is no question for a trier of fact to determine in this regard. Inasmuch as claimants have shown that the defense of sovereign immunity is without merit and defendant has failed to establish otherwise (*see generally Town of Hempstead v Lizza Indus.*, 293 AD2d 739, 740 [2002]), the Court of Claims erred in denying claimants' motion to dismiss that affirmative defense.

The parties' remaining contentions have been considered and are found to be either academic or without merit.

Rose, J.P., Malone Jr., McCarthy and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied claimants' motion to dismiss defendant's affirmative defense of sovereign immunity; motion granted and said affirmative defense dismissed; and, as so modified, affirmed. **[Prior Case History: 27 Misc 3d 1209(A), 2010 NY Slip Op 50635(U).]**

---

**3.** The inspector who conducted the first inspection after such modification testified that he did not know if he or anyone ever came to the conclusion that the modification did not negatively affect the stability of the vessel.