Egan Jr., J.
On May 16, 2006, claimant’s long-time girlfriend, Amy Islas, received a telephone call informing her that her father, “Hawk,” was missing from her parents’ home on State Route 374 in the Town of Dannemora, Clinton County. Hawk had entered the woods earlier in the day to check on his minnow traps in a local stream and, after several hours passed without his safe return, was feared lost. Islas proceeded to her parents’ residence and, after stopping to pick up his son at a local gym, claimant arrived there as well and parked his Chevrolet pickup truck in the driveway.
Various employees of the State Police and Department of Environmental Conservation (hereinafter DEC), together with members of the Dannemora Volunteer Fire Department, responded to the scene and, with the assistance of a K-9 unit and a helicopter from the Department of Homeland Security, located Hawk. At approximately 12:45 a.m., Hawk emerged from the woods and was transported to a local hospital for evaluation.
*1015 Shortly thereafter, claimant, Islas and their son climbed into claimant’s truck — intending to go to the hospital. According to claimant, his view of the highway was blocked by both the cap on the back of his truck and vehicles parked along the south shoulder of State Route 374, prompting him to approach a group of uniformed individuals gathered on the front lawn of the residence and ask for assistance in backing out of the driveway. As claimant pulled out onto the highway — purportedly with the assistance of a DEC forest ranger — his truck was struck by an eastbound vehicle operated by Hamilton Shutts, causing various injuries to claimant. Shutts, who allegedly had a blood alcohol content of .17%, was convicted of vehicular assault in the second degree and sentenced to six months in jail and a period of probation; after violating the terms thereof, Shutts was sentenced to 1 to 3 years in prison.[1]
In August 2008, and after being granted permission to file a late claim, claimant commenced this action against defendant alleging that its employees were negligent in guiding his vehicle onto the highway and into the path of oncoming traffic. A bifurcated trial ensued, during the course of which defendant took the position that none of its employees assisted claimant in backing out of the driveway on the night in question. The Court of Claims credited claimant’s version of the events, however, finding that a DEC forest ranger did in fact assist claimant with backing out of the driveway and, further, was negligent in the manner in which he did so. The Court of Claims nonetheless dismissed the claim, concluding that — at the time of the accident — the ranger was performing a governmental function within the exercise of his discretion and, as such, defendant was immune from liability. This appeal by claimant ensued.
We affirm. “Although the State long ago waived sovereign immunity on behalf of itself and its municipal subdivisions, the common-law doctrine of governmental immunity continues to shield public entities from liability for discretionary actions taken during the performance of governmental functions” (Valdez v City of New York, 18 NY3d 69, 75-76 [2011] [citations omitted]). Thus, “even if a plaintiff establishes all elements of a negligence claim, a state or municipal defendant engaging in a governmental function can avoid liability if it timely raises the *1016 defense and proves that the alleged negligent act or omission involved the exercise of discretionary authority” (id. at 76; see McLean v City of New York, 12 NY3d 194, 202 [2009]; Lauer v City of New York, 95 NY2d 95, 99 [2000]; Tango v Tulevech, 61 NY2d 34, 40 [1983]). In this regard, the mere existence of discretionary authority will not suffice; rather, the municipal defendant must establish that such discretionary authority indeed was exercised (see Mon v City of New York, 78 NY2d 309, 313 [1991]; Haddock v City of New York, 75 NY2d 478, 484 [1990]; Metz v State of New York, 86 AD3d 748, 751 [2011]).
As should be apparent from the foregoing, the availability of the governmental immunity defense hinges upon the performance of a governmental function and the corresponding exercise of discretionary authority. A governmental function generally is defined as one “undertaken for the protection and safety of the public pursuant to the general police powers” (Balsam v Delma Eng’g Corp., 90 NY2d 966, 968 [1997]; accord Sebastian v State of New York, 93 NY2d 790, 793 [1999]), whereas a proprietary function is one in which “governmental activities essentially substitute for or supplement traditionally private enterprises” (Sebastian v State of New York, 93 NY2d at 793 [internal quotation marks and citations omitted]). Here, crediting claimant’s proof,[2] it is apparent that the unidentified ranger was — at the time of claimant’s accident — engaged in traffic control or regulation, which “is a classic example of a governmental function undertaken for the protection and safety of the public pursuant to the general police powers” (Balsam v Delma Eng’g Corp., 90 NY2d at 968; accord Santoro v City of New York, 17 AD3d 563, 564 [2005]; Eckert v State of New York, 3 AD3d 470, 470 [2004]; see Lynch v State of New York, 37 AD3d 772, 773 [2007]), thus placing the ranger’s asserted negligence “well within the immunized ‘governmental’ realm of municipal responsibility” (Balsam v Delma Eng’g Corp., 90 NY2d at 968).
As to whether the ranger was engaged in a discretionary or *1017 ministerial act at the time of the collision, the case law makes clear that a “discretionary or quasi-judicial act[ ] involve[s] the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result” (Haddock v City of New York, 75 NY2d at 484 [internal quotation marks and citation omitted]; accord Metz v State of New York, 86 AD3d at 750; Lewis v State of New York, 68 AD3d 1513, 1514 [2009]; see Lauer v City of New York, 95 NY2d at 99). “Government action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general” (McLean v City of New York, 12 NY3d at 203; accord Valdez v City of New York, 18 NY3d at 76-77). Simply put, traffic control is an inherently discretionary act (see Lewis v City of New York, 82 AD3d 410, 411 [2011], lv denied 16 NY3d 713 [2011]; Devivo v Adeyemo, 70 AD3d 587 [2010]; see also Balsam v Delma Eng’g Corp., 90 NY2d at 968), i.e., one that by its very nature necessarily involves the exercise of reasoned judgment.
There being no dispute that defendant pleaded the governmental immunity defense in its answer, all that remains for our consideration is whether the record as a whole contains sufficient proof to establish that the ranger did in fact exercise discretion/reasoned judgment when assisting claimant in backing out of the driveway. Although claimant asserts that defendant failed to proffer any evidence to this effect, claimant’s own testimony reveals that the ranger exercised discretion in assisting him in backing out of the driveway. Specifically, claimant testified that when he first started to back out of the driveway, the ranger was standing on the south shoulder of State Route 374. As claimant continued to back up, the ranger moved to the middle of the road and, by claimant’s own admission, looked both east and west as he continued to motion claimant out of the driveway. Notably, claimant acknowledged that the ranger “was [being] cautious about what was coming from [the] direction of Dannemora.” Such testimony, in our view, is more than sufficient to establish that the ranger was — at the time of claimant’s accident — engaged in a governmental function involving the actual exercise of discretionary authority and, as such, the Court of Claims correctly concluded that defendant was immune from liability. Claimant’s remaining contentions are either lacking in merit or, in light of the foregoing conclusion, have been rendered academic.
Rose, J.R, Spain, Malone Jr. and Kavanagh, JJ., concur. Ordered that the judgment is affirmed, without costs.

. Shutts testified at his examination before trial that after consuming at least two beers, he and a friend shared a liter of rum, after which he also drank two Long Island Iced Teas. Shutts and his friend then climbed into Shutts’s car and headed to the Stewart’s shop in Dannemora to buy cigarettes. On the way back to Shutts’s residence, and while traveling eastbound on State Route 374, the collision with claimant’s vehicle occurred.

. As defendant aptly observes, the proof offered by claimant’s witnesses was often contradictory and inconsistent and, generally speaking, stood in marked contrast to the unequivocal testimony offered by defendant’s witnesses — including a disinterested member of the local fire department and Islas’s own brother. Although this Court’s review power in the context of a nonjury trial indeed is as broad as the trial court’s (see Martin v State of New York, 39 AD3d 905, 907 [2007], lv denied 9 NY3d 804 [2007]), we will accept— for purposes of this discussion — claimant’s version of the events and, for the reasons that follow, find it unnecessary to consider defendant’s alternate ground for dismissing the underlying claim — namely, that there is insufficient evidence to support a finding that a ranger assisted claimant in backing out of the driveway.