[905 NE2d 1167, 878 NYS2d 238]

CHARLENE McLEAN, Individually and as Mother and Natural Guardian of BRIANA HALL, an Infant, Respondent, v CITY OF NEW YORK, Appellant, et al., Defendants.

Argued February 19, 2009; decided March 31, 2009

## POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel,* New York City (*Edward F.X. Hart, Stephen J. McGrath* and *Leonard Koerner* of counsel), for appellant. The City of New York is not liable for plaintiff infant's injuries because the City neither placed the infant in Patricia Theroulde's care nor advised her mother to place the child with Theroulde, because the statutory scheme pursuant to which plaintiff sued does not create a private right of action and because no special duty of care or reliance thereon existed between the City and plaintiff. (*Lauer v City of New York,* 95 NY2d 95; *Tango v Tulevech,* 61 NY2d 34; *Mark G. v Sabol,* 93 NY2d 710; *Pelaez v Seide,* 2 NY3d 186; *Sheehy v Big Flats Community Day,* 73 NY2d 629; *Uhr v East Greenbush Cent. School Dist.,* 94 NY2d 32; *Haggerty v Diamond,* 251 AD2d 455; *Carossia v City of New York,* 39 AD3d 429; *Sean M. v City of New York,* 20 AD3d 146; *Smullen v City of New York,* 28 NY2d 66.)

*Sullivan Papain Block McGrath & Cannavo P.C.,* New York City (*Brian J. Shoot* of counsel), and *John J. Appell* for respondent. I. Irrespective of whether defendant City of New York owed plaintiffs a "special duty" of care, there are, at the very least, triable issues of fact concerning whether the City should stand liable at common law for its plainly negligent performance of admittedly ministerial functions. (*Tango v Tulevech,* 61 NY2d 34; *Lauer v City of New York,* 95 NY2d 95; *Florence v Goldberg,* 44 NY2d 189; *Steitz v City of Beacon,* 295 NY 51; *Mon v City of New York,* 78 NY2d 309; *Kovit v Estate of Hallums,* 4 NY3d 499; *Rottkamp v Young,* 21 AD2d 373, 15 NY2d 831; *Haddock v City of New York,* 75 NY2d 478; *Arteaga v State of New York,* 72 NY2d 212; *Mosher-Simons v County of Allegany,* 99 NY2d 214.) II. Assuming, arguendo, that defendant City of New York owed plaintiffs no duty in the absence of a "special relationship" with plaintiffs, there are, at the least, triable issues of

fact as the existence of such a relationship and as to whether the City negligently breached the duty imposed by that relationship. (*Pelaez v Seide,* 2 NY3d 186; *Sanchez v State of New York,* 99 NY2d 247; *Schuster v City of New York,* 5 NY2d 75; *Garrett v Holiday Inns,* 58 NY2d 253; *Mark G. v Sabol,* 93 NY2d 710; *Sean M. v City of New York,* 20 AD3d 146; *Merice v County of Westchester,* 305 AD2d 383; *Barnes v County of Nassau,* 108 AD2d 50; *Bartels v County of Westchester,* 76 AD2d 517; *Blanca C. v County of Nassau,* 103 AD2d 524.) III. There are triable issues of fact concerning whether defendant City of New York's negligence should, in addition, subject it to statutory liability under the Social Services Law. (*Pelaez v Seide,* 2 NY3d 186; *Sheehy v Big Flats Community Day,* 73 NY2d 629; *Uhr v East Greenbush Cent. School Dist.,* 94 NY2d 32; *Mark G. v Sabol,* 93 NY2d 710.)

## OPINION OF THE COURT

SMITH, J.

Once again we confront a case in which a failure by government to do its job has caused harm, and once again we hold that this is not one of the few cases in which such a failure subjects the government to tort liability.

## I

Patricia Theroulde had a business caring for young children at her home in Manhattan. Her facility was of the kind classified by the Social Services Law as a "family day care home"— "a program caring for children for more than three hours per day per child in which child day care is provided in a family home for three to six children" (Social Services Law § 390 [1] [e]). Family day care homes are not licensed by the State, but are required to register with the State Department of Social Services (DSS) (*id.* § 390 [2] [b]). A registration is valid for two years (*id.* § 390 [2] [d] [ii] [A]), and an application for the renewal of registration may not be accepted unless "the office of children and family services [OCFS] has received no complaints . . . alleging statutory or regulatory violations" or, having received such complaints, OCFS has inspected the home and determined that it is operated in compliance with law (*id.* § 390 [2] [d] [ii] [B] [4]). DSS entered into a contract with the New York City Department of Health (DOH), in which DOH in substance agreed to perform DSS's registration duties in New York City.

Ms. Theroulde registered in 1997. During the two year period of her initial registration, the New York City Administration for Children's Services (ACS) received two complaints about her home, asserting that her husband had dipped a child's hand into a bowl of hot oatmeal, and that a child had been left alone for an hour and a half in a nearby store. ACS investigated the complaints and found both of them to be "indicated"—i.e., substantiated. There is no evidence that the home was later inspected and found to be in compliance, so it seems clear that Ms. Theroulde should not have been permitted to renew her registration when it expired in 1999.

But DOH did permit her to renew. The reasons for this are not entirely clear. The record does not show whether ACS reported the two complaints about Ms. Theroulde's home to OCFS—but that question is academic, because, amazingly, DOH did not make a practice of checking with OCFS before renewing registrations. It is debatable whether the City or the State is to blame for this failure; DOH, a city agency, says it complied with regulations of DSS, a state agency, which do not expressly require a search for complaints prior to renewal of a registration. Since we consider the case on a motion for summary judgment, we assume that DOH was at fault.

Ms. Theroulde's renewed registration certificate was issued on February 11, 1999. In October of the same year, plaintiff, Charlene McLean, was searching for a day care provider for her soon-to-be-born child. She called ACS, which sent her a list of providers near her home. The list was taken from DOH's database of registered providers, and Ms. Theroulde's name was on the list.

In the course of obtaining the list from ACS, Ms. McLean had a telephone conversation with an ACS representative. According to Ms. McLean's version of the conversation, she specifically asked for "a licensed baby-sitter that gets investigated routinely by your office." She testified that the conversation continued: " 'Yes. All of our day cares are licensed and they get investigated routinely between six months to a year.' And then I said, 'They don't have any complaints,' and she assured me that all of the ones on the list have no complaints."

After Ms. McLean's daughter Briana was born, Ms. McLean placed her in Ms. Theroulde's care. It is a fair interpretation of the evidence (though the City disputes the point) that she did so in reliance on information the City provided—that she would

not have chosen Ms. Theroulde as a day care provider but for the inclusion of Ms. Theroulde's home on a city-generated list, and the information about that list provided by an ACS representative on the phone. When Briana was three months old she fell from a bed to the floor while in Ms. Theroulde's care, and suffered a brain injury.

Ms. McLean brought this action against the City on Briana's and her own behalf, claiming that the City's negligence was the cause of the injury. Supreme Court denied the City's motion for summary judgment (14 Misc 3d 922 [2007]), and the Appellate Division affirmed (49 AD3d 393 [2008]). The Appellate Division granted leave to appeal to us on a certified question, and we now reverse.

## II

We have long followed the rule that an agency of government is not liable for the negligent performance of a governmental function unless there existed "a special duty to the injured person, in contrast to a general duty owed to the public" (*Garrett v Holiday Inns*, 58 NY2d 253, 261 [1983]; *see also e.g. Kircher v City of Jamestown*, 74 NY2d 251 [1989]; *Lauer v City of New York*, 95 NY2d 95 [2000]; *Pelaez v Seide*, 2 NY3d 186 [2004]; *Laratro v City of New York*, 8 NY3d 79 [2006]). Such a duty, we have explained—"a duty to exercise reasonable care toward the plaintiff"—is "born of a special relationship between the plaintiff and the governmental entity" (*Pelaez*, 2 NY3d at 198-199). Here, Ms. McLean has not shown a special relationship giving rise to a special duty, and so cannot recover against the City.

As we said in *Pelaez*:

> "A special relationship can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation."
> (2 NY3d at 199-200 [citation omitted]; *see also Garrett*, 58 NY2d at 261-262.)

Ms. McLean relies on the first two of these ways. She says that Social Services Law § 390, which governs the licensing and

registration of child day care providers, creates a statutory duty for the benefit of a class of which she and her daughter are members; and also that the City voluntarily assumed a duty that she justifiably relied on the City to perform. We reject both arguments.

Statutory Duty

In *Pelaez*, we elaborated further on the "statutory duty" prong of the special relationship rule. We said:

> "To form a special relationship through breach of a statutory duty, the governing statute must authorize a private right of action. One may be fairly implied when (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the governing statute; and (3) to do so would be consistent with the legislative scheme (*see Sheehy v Big Flats Community Day*, 73 NY2d 629, 633 [1989]). If one of these prerequisites is lacking, the claim will fail." (2 NY3d at 200.)

Here, as in *Pelaez* and *Sheehy*, the claim fails the last of these tests. To recognize a private right of action under Social Services Law § 390 would be inconsistent with the legislative scheme.

Section 390 is a detailed statute, with 13 subdivisions and many more subparts, occupying 10 pages of McKinney's Consolidated Laws. It specifies which child care providers shall be licensed and which only registered (Social Services Law § 390 [2] [a]-[c]); sets out some prerequisites for registration (*id.* § 390 [2] [d] [ii] [B]); requires OCFS to establish, by regulation, requirements for licensed and registered providers (*id.* § 390 [2-a]); provides for inspections and investigations (*id.* § 390 [3] [a], [d], [e] [iii]; [4] [a]); requires certain information to be available to the public (*id.* § 390 [8]); authorizes OCFS to prevent noncompliant providers from caring for children (*id.* § 390 [3] [e] [ii]); provides for denial, suspension and revocation of licenses and registrations for violations of law (*id.* § 390 [10]); and requires OCFS to establish civil penalties for such violations (*id.* § 390 [11]). Social Services Law § 389 (1) imposes criminal liability for willful violations of the provisions of the Social Services Law, including section 390. But there is no statutory provision for governmental tort liability. It is fair to infer that the Legislature considered carefully the best means for enforcing

the provisions of Social Services Law § 390, and would have created a private right of action against erring government agencies if it found it wise to do so. This is not a case where the Legislature has simply prohibited or required certain conduct, and left the mechanism of enforcement to the courts (*see e.g. Negrin v Norwest Mtge.*, 263 AD2d 39, 47-48 [2d Dept 1999]).

We addressed a similar issue in *Mark G. v Sabol* (93 NY2d 710 [1999]). The plaintiffs there, children alleging that they had suffered abuse or neglect in the foster homes where they had been placed by New York City child welfare officials, sought recovery from the City, relying on provisions of the Social Services Law designed to protect foster children and to prevent child abuse generally. Emphasizing the detailed, comprehensive nature of the statutes the plaintiffs relied on, we rejected their claim that those statutes implied a private right of action. "[I]t would be inappropriate," we said, "for us to find another enforcement mechanism beyond the statute's already 'comprehensive' scheme. . . . Considering that the statute gives no hint of any private enforcement remedy for money damages, we will not impute one to the lawmakers" (93 NY2d at 720-721). We reach a like conclusion here.

Duty Voluntarily Assumed

Nor is this one of the narrow class of cases in which a "special relationship" can arise from a duty voluntarily undertaken by a municipality to an injured person. We listed the elements of such a special relationship in *Cuffy v City of New York* (69 NY2d 255, 260 [1987]):

> "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking."

These elements simply are not present here. Ms. McLean points to no "promises or actions" by which the City assumed a duty to do something on her or her daughter's behalf. The City's duty to Ms. McLean and Briana was neither more nor less than its duty to any other parent and child in need of day care. Indeed, the only "direct contact" between the City and Ms.

McLean was a routine telephone conversation in which an ACS employee agreed to send a list of registered providers and answered questions about what registration meant. Though we assume that the employee was negligent in answering the questions and that her negligence caused injury, the City is not liable. The relationship between the City and Ms. McLean was not "special," as our cases use that term.

### III

■ We have rejected Ms. McLean's argument that this case fits a recognized category of special relationship. But Ms. McLean also argues that she can prevail without fitting her case into such a category. She argues that no special relationship is needed, because the acts and omissions on which she relies were ministerial rather than discretionary; and that, if a special relationship is required, we should recognize a new category that includes her and Briana's relationship with the City. We find these arguments unpersuasive.

The Ministerial/Discretionary Distinction

Our cases on governmental tort liability have long distinguished between discretionary and ministerial acts of government officials. In *Tango v Tulevech* (61 NY2d 34, 40 [1983]), we made clear that discretionary acts may not be a basis of liability: "[W]hen official action involves the exercise of discretion, the officer is not liable for the injurious consequences of that action even if resulting from negligence or malice." We added that "when the action is exclusively ministerial, the officer will be liable if it is otherwise tortious and not justifiable pursuant to statutory command." (*Id.*) In *Lauer* (95 NY2d at 99-100), we elaborated on *Tango*, repeating that a public employee's discretionary acts "may not result in the municipality's liability even when the conduct is negligent," but adding that even negligent ministerial acts are not "otherwise tortious" where a plaintiff cannot show "a duty running directly to the injured person." Even where an act is ministerial, we said, "[t]o sustain liability against a municipality, the duty breached must be more than that owed the public generally" (*id.* at 100).

Thus *Tango* and *Lauer* hold that discretionary municipal acts may never be a basis for liability, while ministerial acts may support liability only where a special duty is found. These cases contradict Ms. McLean's argument that, because the acts for which she sues are ministerial, no special duty or special relationship need be established.

Ms. McLean relies, however, on admittedly confusing language in two more recent cases. In *Pelaez*, we said: "As a rule, municipalities are immune from tort liability when their employees perform discretionary acts . . . . In a narrow exception to the rule, we have upheld tort claims when plaintiffs have established a 'special relationship' with the municipality" (2 NY3d at 193). And in *Kovit v Estate of Hallums* (4 NY3d 499, 505 [2005]), we said, citing *Pelaez*: "municipalities generally enjoy immunity from liability for discretionary activities they undertake through their agents, except when plaintiffs establish a 'special relationship' with the municipality." If these comments are taken to mean that the special duty/special relationship rule applies to discretionary rather than ministerial acts, then *Tango* and *Lauer* on the one hand, and *Pelaez* and *Kovit* on the other, seem inconsistent.

If there is an inconsistency, we resolve it now: *Tango* and *Lauer* are right, and any contrary inference that may be drawn from the quoted language in *Pelaez* and *Kovit* is wrong. Government action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general. The holdings of *Pelaez* and *Kovit* are consistent with this principle. In each of those cases we found no special relationship or special duty. Thus there could be no liability, whether the actions at issue were characterized as ministerial or discretionary.

Here, we assume, in Ms. McLean's favor, that the conduct she complains of was ministerial. Because, for the reasons we have explained, she has shown no special duty, there can be no liability.

The Argument for a New Category of Special Relationship

Ms. McLean's other argument—that we should recognize a new category of special relationship applicable to this case—is a hybrid. It is derived in part from a provision of the contract between DOH and DSS in which DOH (a city agency) agreed to perform, in New York City, the registration duties assigned to DSS (a state agency) by statute. Under the heading "Indemnification," DOH agreed among other things to "be solely responsible and answerable in damages for any and all accidents and/or injuries to persons . . . or property arising out of or related to the services to be rendered." We find this provision to be without significance in this case. It is plainly designed to protect

the State, by requiring the City alone to bear any liability that might arise. It does not create any liability that would not otherwise exist—and it does not create a special relationship between the City and any person or class of people.

But Ms. McLean's argument is also derived from public policy. She suggests that the helplessness of young children, and the State's powerful interest in protecting them from neglect or abuse, should lead us to announce the existence of a special relationship between those who register child care providers and parents and children who need child care. This is, in substance, an invitation to relax the special relationship rule to accommodate an especially appealing class of cases. We decline the invitation. A well settled rule of law denies recovery in cases like this, and that rule, by its nature, bars recovery even where a government blunder results in injury to people deserving of the government's protection.

The rationale of the rule, as we explained in *Laratro* (8 NY3d at 82), is that exposing municipalities to tort liability would be likely to render them less, not more, effective in protecting their citizens. Lawsuits, as we said in *Pelaez* (2 NY3d at 201), are not the only way of dealing with governmental failure—and might even impel governments to withdraw or reduce their protective services. In *Lauer* (95 NY2d at 101), we quoted our warning in *Steitz v City of Beacon* (295 NY 51, 55 [1945]) that a "crushing burden" should not be imposed on a governmental body "in the absence of [statutory] language clearly designed to have that effect." These reasons forbid the making the sort of ad hoc exceptions to the special duty/special relationship rule that Ms. McLean seeks in this case.

## IV

Accordingly, the order of the Appellate Division should be reversed, with costs, the motion of defendant City of New York for summary judgment dismissing the complaint against it granted, and the certified question answered in the negative.

Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Order reversed, etc.