OPINION OF THE COURT
Philip G. Minardo, J.
Defendants’ motion to dismiss the complaint is granted.
*568 The plaintiff homeowner commenced this action to recover for water damage to his premises and personal property located at 33 Iona Street, in the Midland Beach section of Staten Island. It is alleged in the complaint that plaintiff’s residence was “completely flooded” from April 15, 2007 through April 17, 2007 as a result of a storm-driven overflow of the banks of a section of the Staten Island Bluebelt that lies in close proximity to the subject location. It is further alleged that both the overflow of storm/rain water and the resulting property damage were caused by defendants’ negligent failure to inspect and maintain adequate banks and/or channels along or within the Staten Island Bluebelt in the vicinity of plaintiffs premises. More specifically, plaintiff claims that defendants failed to (1) dredge the depth and width of its water channels to permit an adequate flow of storm/rain water into the ocean, (2) perform adequate and/or ongoing inspections thereof, and (3) properly maintain the banks of said water channels to prevent an overflow.
In moving to dismiss the complaint, it is alleged that liability cannot be imposed against the City and its Department of Environmental Protection, since there is no evidence that the municipality and/or its agencies had actual or constructive notice of the particular condition that caused the flooding, or that they acted affirmatively to create such condition. In support, the City relies upon the affidavit of Bruce Robinson, a record searcher for the New York City Department of Environmental Protection (hereinafter, the DEP), who attests that he performed a two-year search for complaints, maintenance records, repair records and inspection records relative to the location at or near 33 Iona Street, and found only three “Service Inspection Requests Detail Reports” and two “Completed Hydrant Work Order Reports,” all of which are unrelated to the alleged storm water overflow at the subject location.
Defendants further maintain that under the existing law in this state, a municipality cannot be held liable for its failure to provide a drainage system sufficient to dispose of surface water flowing as a result of natural drainage and/or the grading and paving of streets. While movants concede that the maintenance and repair of municipal sewers and/or drainage systems, including the removal of obstructions from such structures, is a ministerial duty for which a municipality may be held liable for any negligence in the performance thereof, it is argued that here, there are no such systems in existence in plaintiffs neighbor *569 hood. Accordingly, defendants contend that there can be no claim predicated on negligent maintenance.
The City also points out that the flooding arose as the result of a sudden occurrence, i.e., a severe rainstorm, and therefore, liability may not be imposed upon defendants as a matter of law. In this regard, the City requests that the court take judicial notice of the official weather reports for the subject area, which indicate that over seven inches of rain fell between April 15, 2007 and April 16, 2007, an event which plaintiff himself described as “downpour” from a “Nor’easter.”
Defendants also rely on plaintiff’s failure to submit an expert’s affidavit setting forth an opinion as to the cause of the flooding in this case. In this regard, it is alleged that plaintiff’s conclusory allegations in the form of his own lay testimony that the natural drainage system at the subject location was either defective or negligently maintained is insufficient as a matter of law.
Finally, defendants contend that the City is immune from liability for any claims related to deficiencies in the so-called “New Creek [drainage] System,” which is comprised of 70 acres of wetlands in the Midland Beach area of Staten Island. According to the deposition testimony of the DEP’s Dana Gumb, Director for the Staten Island Bluebelt, a project involving the New Creek System is currently underway for the Midland Beach area, where a storm sewer system does not presently exist. The witness further testified that the DEP is currently working on the “actual drainage plan that lays out [1] the storm sewers [to be constructed] in each street bed ... [2] the outlets for those storm sewers into the Bluebelt and [3] a schematic design for . . . drainage improvements . . . within [this area] of the Blue-belt.” Based on the foregoing, it is alleged that the DEP’s plans with regard to the design and implementation of the New Creek project constitute a discretionary governmental function for which it is entitled to immunity from liability.
In opposition to the motion, plaintiff maintains that the damage to his home and personalty resulted from defendants’ failure to inspect and maintain the channels and waterways that remove rainwater from the Midland Beach area, where he has resided since 1972. According to plaintiff, Iona Street is adjacent to and part of a series of neighboring streets known as the “Indian Streets” from which rainwater is drained through the New Creek System into the ocean. Plaintiff claims that since the early- to mid-1990s, Iona Street and the surrounding area *570 have experienced “ongoing and repeated” flooding from “rainstorm water overflow,” and that such flooding occurs when storm water overflows the banks of certain channels and waterways within the New Creek System, which have narrowed and eroded over time. He further claims that this condition is the product of defendants’ failure to inspect and properly maintain the New Creek System. In support, plaintiff attests that during the 38 years he has resided at 33 Iona Street, he has personally observed the unchecked deterioration of the depth and width of the waterways within the New Creek System, as well as the collection of debris and other obstacles impeding the flow of storm water into the ocean.
In support of these contentions, plaintiff submits numerous local newspaper articles which echo his claims of the DEP’s ongoing failure to maintain and inspect the waterways in the New Creek System in order to establish that defendants have had actual notice of the flooding affecting the “Indian Streets” for nearly 20 years during which local politicians and civic associations have repeatedly urged defendants to dredge and/or remove sediment and debris to prevent further flooding by improving the flow of storm water into the ocean. Plaintiff also submits copies of certain correspondence dated August 9, 2004 written to the DEP on his behalf by the district manager of Community Board No. 2 on Staten Island regarding the flooding and increased water flow on the corner of his block created by the construction of new homes in the neighboring area.
In addition, plaintiff relies upon the deposition testimony of DEP employees Dana Gumb (Director for the Staten Island Bluebelt) and James Rossi (Staten Island Bluebelt Field Manager), each of whom acknowledged that they were unaware of any inspections and/or maintenance of the New Creek System performed by the DEP prior to April 15, 2007. Similarly, the affidavit of DEP’s District Supervisor, Jack Crawford, dated June 24, 2010, states that no records relating to inspection/ maintenance and dredging of the Bluebelt in the Midland Beach area were found for the five-year period prior to April 15, 2007. Plaintiff also points out that at his examination before trial, Dana Gumb described the west branch of New Creek, which lies within plaintiff’s neighborhood, as a channel that “is filled with silt and sediment and is not the optimal size to contain the storm water . . . and needs to be dredged.” This witness further testified that although the main channel was dredged in the early 1990s, DEP has never employed any site stabilization *571 strategies at New Creek such as “stream bank stabilization,” “stream restoration with meanders,” or “installing underground sand filters.” However, it is undisputed that such methods have been used in other parts of the Staten Island Bluebelt.
Finally, plaintiff recounts that the DEP has admitted that it had prior notice of the “Nor’easter” on April 15, 2007, yet failed to take any precautionary measures to address possible flooding, as evidenced by Mr. Gumb’s deposition testimony that he was not aware of any inspections or maintenance work by DEP’s field management personnel in the New Creek area prior to April 15, 2007, although “they know [that] when a major storm is approaching . . . it is time to go out and inspect [the] choke-points in the system.” Further, this witness admitted receiving citizen complaints via telephone and at civic meetings regarding standing water in the streets and flooded basements, and acknowledged that he had personal knowledge of the “long history of flooding” in the Indian Streets based on his own observations of the seepage basins that were failing in the subject area. Similarly, plaintiff cites the deposition testimony of James Rossi to the effect that maintenance work in the New Creek System did not begin until 2008.
In view of the foregoing, plaintiff maintains there can be no dispute that the City had actual notice of the problem with flooding in his neighborhood, and that its admitted failure to inspect and maintain the New Creek System was an act of negligence.
It is well established “[g]overnment action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general” (see McLean v City of New York, 12 NY3d 194, 203 [2009]).
In the matter at bar, the gravamen of plaintiffs complaint is that the municipal defendants were negligent in failing to “ensure the efficiency and utility of the Bluebelt as a natural storm/rain water drainage system.” In this regard, it is the opinion of this court that DEP’s management, maintenance and allocation of resources to safeguard and maintain public wetlands within the Bluebelt is a governmental function that involves the exercise of discretion which may not be the basis for tort liability (see Kochanski v City of New York, 76 AD3d 1050 [2d Dept 2010]). In any event, even if defendants’ alleged failures could be deemed ministerial in nature, plaintiff makes *572 no claim that the City and/or DEP undertook a special duty to the plaintiff homeowner as opposed to a general duty to the public with regard to the maintenance and care of the New Creek System (see McLean v City of New York, 12 NY3d at 203). Thus, the motion for summary judgment dismissing the complaint and any cross claims as against the defendants must be granted on the ground of governmental immunity (see Kochanski v City of New York, supra).
In view of the foregoing, any remaining contentions need not and will not be addressed.
Accordingly, it is ordered, that defendants’ motion, inter alia, for summary judgment is granted and the complaint is hereby dismissed.