OPINION OF THE COURT
W. Brooks DeBow, J.
This claim seeks damages for 320 days of alleged wrongful confinement. Claimant has moved for partial summary judgment on the issue of liability. Defendant opposes claimant’s motion, and cross-moves for summary judgment dismissing the claim. Claimant opposes the cross motion.[2]
The facts are undisputed. On April 10, 2007, after having pleaded guilty to a felony offense, claimant was sentenced as a second felony offender to a term of three years’ incarceration and five years’ postrelease supervision (PRS). Claimant’s sentence and commitment order (see claim No. 118149, exhibit C) stated that the sentence imposed on April 10, 2007 was to run concurrently with a prior undischarged sentence that was being served for another offense. Pursuant to these concurrent sentences, claimant’s conditional release eligibility (CRE) date was February 15, 2009, and his maximum expiration (ME) date was July 21, 2009. The parties do not dispute that the concurrent aspect of this sentence was not in compliance with Penal Law § 70.25 (2-a), which required that since claimant was being sentenced as a second felony offender, his sentence must be imposed consecutively to the undischarged sentence. Applying Penal Law § 70.25 (2-a) and not the sentencing court’s sentence and commitment order, the Department of Correctional Services (DOCS)[3] calculated claimant’s sentence of incarceration to run consecutively to the prior sentence, and accordingly, *245 claimant was held beyond both the CRE and ME that applied to the concurrent terms. Following claimant’s protestations (see claim, exhibits E, F), DOCS sought clarification from the sentencing judge (id., exhibit G), who confirmed the concurrent sentence as set forth in the commitment order (see id., exhibit H). Thereafter, DOCS recalculated claimant’s sentence to run concurrently to the prior sentence (id., exhibit I), and claimant was released from DOCS’ custody on December 31, 2009, well past the CRE and ME dates.
As a foundation for discussion of the parties’ arguments on liability, the following allegations are stated in the verified claim: “This is a claim for unlawful imprisonment and/or wrongful confinement that resulted from the illegal acts of employees of . . . DOCS who wilfully defied a New York State Supreme Court Sentence and Commitment Order by knowingly and intentionally ignoring said Sentencing Transcript and Commitment Order and classifying claimant’s sentence as consecutive to (rather than concurrent with) a prior undischarged term of incarceration.” (Claim ¶ 2.)
In the view of the court, and as framed by the allegations in the claim, the issue is not whether DOCS merely miscalculated claimant’s sentence, nor whether it properly held claimant in accordance with the provisions of the Penal Law. Rather, the issue presented in this claim is whether defendant may be found liable for DOCS’ failure to follow the dictates of the sentencing court’s unequivocal and complete order of commitment.
A fundamental and well-established principle of law drives this claim. As the Court of Appeals has stated, “DOCS is not free to disregard a commitment order” as “ ‘prison officials are conclusively bound by the contents of commitment papers accompanying a prisoner’ ” (Matter of Murray v Goord, 1 NY3d 29, 32 [2003], quoting Middleton v State of New York, 54 AD2d 450, 452 [3d Dept 1976], affd on op below 43 NY2d 678 [1977]; Mullen v State of New York, 122 AD2d 300, 302 [3d Dept 1986], lv denied 68 NY2d 609 [1986], cert denied 480 US 938 [1987] [DOCS “is bound to implement a commitment regardless of whether the sentence is proper”]; Matter of Midgley v Smith, 63 AD2d 223, 226 [4th Dept 1978] [“corrections officials are bound by the terms of the commitment, regardless of whether or not the sentence was proper”]). Defense counsel asserts that “the failings of DOCS in this case were that it calculated the claimant’s conditional release and maximum expiration dates *246 based on the belief or assumption that he was properly sentenced [by the sentencing judge] to consecutive sentences as mandated by the statutory law of New York State” and that “the time computation was based on the belief that the claimant was sentenced [properly]” (Monjeau affirmation¶ 6 [emphasis added]). In other words, DOCS calculated claimant’s CRE and ME dates with reference to the statutes, but without regard to the commitment order. This is in clear violation of the mandate that DOCS is not free to disregard the commitment order.
The elements of a cause of action for unlawful confinement are “that the defendant intended to confine the [claimant], that the [claimant] was conscious of the confinement and did not consent to the confinement, and that the confinement was not otherwise privileged” (Martinez v City of Schenectady, 97 NY2d 78, 85 [2001]; Broughton v State of New York, 37 NY2d 451, 456 [1975], cert denied sub nom. Schanbarger v Kellogg, 423 US 929 [1975]). In support of his motion, claimant demonstrates that defendant intended to confine claimant (see claim No. 118149, exhibit E [DOCS’ time calculations]), and that claimant was conscious of the confinement and did not consent thereto (see Langone affidavit, exhibit A, at 21-26). He additionally demonstrates that the calculation of his CRE and ME dates based upon consecutive sentencing was not in accordance with the sentencing court’s commitment order of concurrent sentences. Thus, claimant has clearly established a prima facie case of wrongful confinement entitling him to summary judgment on liability.
Defendant opposes claimant’s motion for summary judgment and supports its cross motion for summary judgment dismissing the claim with the argument that it is immune from liability by application of McLean v City of New York (12 NY3d 194 [2009]), which holds that discretionary governmental conduct is always immune from liability, and that ministerial conduct may give rise to liability only where the claimant demonstrates the existence of a special relationship between claimant and defendant (see Monjeau affirmation ¶¶ 8-17). Defendant’s reliance on McLean is misplaced, as governmental immunity as set forth in McLean applies to torts arising from “the negligent performance of a governmental function” (McLean, 12 NY3d at 199 [emphasis added]). Defendant acknowledges, however, that the tort of false imprisonment/wrongful confinement is an intentional tort (see Monjeau affirmation ¶¶ 8, 17), and the claim filed by claimant alleges only intentional conduct. *247 Defendant’s assertion of McLean is based upon a mischaracterization of the claim as one alleging an error by DOCS in sentence computation (see e.g. Matter of Brown v Annucci, 60 AD3d 1223 [3d Dept 2009]; Matter of Deary v Goord, 32 AD3d 1074 [3d Dept 2006]), when the claim clearly alleges that defendant is liable for DOCS’ intentional failure to act in accordance with the sentence and commitment order issued by the sentencing court. Thus, defendant’s invocation of governmental immunity is without force in this case.
Defendant further argues that it is entitled to summary judgment dismissing the claim because defendant’s conduct was privileged, and thus, an element of claimant’s cause of action for unlawful confinement cannot be established. Defendant first contends that it was acting merely in excess of its jurisdiction and not in the absence of jurisdiction, and thus, its conduct was privileged (see Collins v State of New York, 69 AD3d 46, 51-52 [4th Dept 2009] [acts in excess of jurisdiction are privileged, while acts in the “clear absence” of jurisdiction are not]). Defendant asserts that because “CPL § 440.40 provides DOCS the authority to have an inmate returned to the sentencing court in order to resentence him to the statutorily mandated sentence” (Monjeau affirmation ¶ 19), either of its own accord or by referral to the appropriate District Attorney (see id. H 21), its conduct here was privileged. Defendant fails to recognize the obvious flaw in this argument, i.e., DOCS is given the authority and procedures by which to return an inmate to the sentencing court because DOCS lacks jurisdiction to alter the terms of the commitment order whether or not the commitment order is proper (see Matter of Murray v Goord, supra; Mullen v State of New York, supra; Matter of Midgley v Smith, supra). There is a clear distinction to be drawn between those situations in which a sentencing court is silent with respect to a component of sentencing and DOCS calculates a sentence to fill the interstice in a mandatory sentencing scheme that was left by the sentencing court’s silence,[4] and the situation here, where DOCS altered the clear and express mandate of the sentencing court from *248 concurrent to consecutive sentences. Defendant cites no on-point authority for the proposition that DOCS’ conduct in direct contravention of an express direction by the sentencing court is merely in excess of its authority and therefore privileged. In this case, by determining to hold claimant beyond the release date required by the commitment order because the relevant statutes required a different sentence, DOCS intruded into the exclusive province of the judiciary by acting, in essence, as an appellate court vested with the authority to modify an incorrect sentence.[5] In the view of this court, because DOCS lacked any authority to revise the clear, unequivocal and complete commitment order, or to do anything more than cause claimant to be returned to the sentencing court, it was acting not merely in excess of jurisdiction, but was acting without jurisdiction, and therefore, its determination to hold claimant beyond the time as required by the order of the sentencing court is not privileged.
Defendant further asserts that its incarceration of claimant is privileged because he was held pursuant to facially valid process, i.e. “the Parole Warrant that was the basis for claimant’s arrest on or about August 12, 2006” (Monjeau affirmation 1i1f 23, 24, 25, 26). However, defendant provides no authority for its implicit proposition that a parole warrant that authorizes claimant’s confinement prior to his indictment and conviction for a subsequent crime survives the ensuing judgment of conviction or that the parole warrant exists coextensively with the sentencing court’s order of commitment. Thus, defendant has not demonstrated that its incarceration of claimant beyond the term imposed by the sentencing court was privileged pursuant to valid legal process issued by a court or parole authorities (cf. Nazario v State of New York, 75 AD3d 715, 718 [3d Dept 2010], lv denied 15 NY3d 712 [2010] [claimant’s incarceration for violation of PRS flowed from the parole warrant, uninterrupted by subsequent criminal proceedings]).
*249 In sum, because defendant has not demonstrated that DOCS had any authority to ignore a clear and unequivocal order of commitment that expressly addressed every component of claimant’s sentence, it has not demonstrated that it is immune from liability or that its conduct was otherwise privileged and thus, defendant is liable to claimant on his claim for unlawful confinement.
Turning to the question of the period of time for which defendant is liable for the wrongful confinement of claimant, he contends that he should have been released on his CRE which undisputedly occurred on February 15, 2009, and that that is the date on which his unlawful confinement began. Claimant sets forth evidence that as of November 25, 2009, after his CRE date, he had not suffered any loss of good time credit, and that he possessed an earned eligibility certificate and was therefore presumptively eligible for parole (see claim No. 118149, exhibit J). He persuasively argues that calculating his wrongful confinement from the date of his ME rather than his CRE deprives him of his good time allowance without due process (see claimant’s mem of law, Jan. 5, 2011, at 4-7). He further contends that defendant should be estopped from arguing that claimant must demonstrate that he would have been released on his CRE, when it was defendant’s conduct in impermissibly altering the length of his incarceration that deprived him of a timely opportunity to appear before the Time Allowance Committee prior to his CRE (see id. at 7-8). In its submission in opposition to claimant’s motion, defendant neither discusses nor opposes these persuasive arguments. Accordingly, the court finds that claimant has met his prima facie burden of demonstrating that his unlawful confinement began on February 15, 2009, and defendant has not raised a triable issue of fact on that question, and therefore determines that claimant’s unlawful confinement began on February 15, 2009.
Accordingly, it is ordered, that claimant’s motion for partial summary judgment on liability is granted in its entirety, and it is further ordered, that defendant’s cross motion for summary judgment is denied.

. The papers in support of the cross motion were not accompanied by a formal notice of cross motion. However, defense counsel’s affirmation is clearly titled “in support of defendant’s cross-motion for summary judgment.” Claimant has not objected to the absence of a formal notice of cross motion, and has, in fact, submitted papers in opposition to the cross motion. Thus, the defect of lack of notice will be overlooked.

. DOCS is now known as the Department of Corrections and Community Supervision. This decision will refer to the agency by its name at the time of the events complained of.

. See People ex rel. Gill v Greene (12 NY3d 1 [2009] [where Penal Law § 70.25 (2-a) mandated consecutive sentence but sentencing court was silent on whether sentence was concurrent or consecutive to prior sentences, court was deemed to have imposed the consecutive sentence the law requires and DOCS properly calculated sentences to run consecutively in accordance with statute]); and see Matter of Garner v New York State Dept. of Correctional Servs. (10 NY3d 358, 362 [2008] [DOCS acted in excess of its jurisdiction in calculating a sentence to include a statutorily required period of PRS when *248 the commitment order and sentencing judge were silent as to a period of PRS]).

. Claimant does not dispute that his sentence was illegal because the Penal Law required that he be sentenced to consecutive sentences (see Penal Law § 70.25 [1], [2-a]; § 70.06). However, the inference to be drawn from the sentencing court’s confirmation of this illegal sentence (see Langone affidavit, exhibit B, H) is that it was imposed pursuant to a negotiated plea bargain of which the sentencing court approved. In instances such as here, where the criminal defendant is the beneficiary of the illegality of a sentence imposed after a guilty plea, the sentence will not necessarily be upset on direct appeal (see People v Flores, 167 AD2d 160 [1st Dept 1990]).