Order, Supreme Court, New York County (Paul G. Feinman, J.), entered August 17, 2011, which, inter alia, granted defendant’s motion to set aside the jury verdict on the ground that plaintiff failed to establish a prima facie case, affirmed, on the law, without costs.
*585 On November 5, 2005, plaintiff and her boyfriend rode their bicycles to the entrance of the Central Park transverse road at West 65th Street, where a City Department of Transportation (DOT) crew supervisor was in the process of setting up warning cones to close off both lanes of the road to vehicular traffic before starting to repair a “special condition” in the transverse. The supervisor testified that a “special condition” was a defect “bigger than a pothole” but “less involved” than road resurfacing.
Plaintiffs boyfriend asked the supervisor if they could ride through, and he told them “go ahead.” Although plaintiff’s boyfriend crossed the transverse safely, plaintiff was injured when she struck a large pothole.
The jury found that the roadway where the accident occurred was not in a reasonably safe condition. However, the City could not be held liable on that basis because the jury found that the City had not received timely written notice of the particular defect and did not cause or create the condition by an affirmative act of negligence. The sole basis for the City’s liability was the jury’s findings that the supervisor was negligent in allowing plaintiff to enter the transverse and that his negligence was a substantial factor (60%) in causing plaintiffs injuries.
The trial court orally denied plaintiffs motion to set aside the verdict on prior written notice, cause and create, comparative negligence (40%) and additur. Subsequently, the trial court granted defendant’s written motion pursuant to CPLR 4404 to set aside the verdict on the ground that the City was immune from liability because the supervisor was engaged in the discretionary governmental function of traffic control, not the proprietary function of street repair, when he allowed plaintiff to proceed.
“ ‘[Gjovernment action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general’ ” (Valdez v City of New York, 18 NY3d 69, 76-77 [2011], quoting McLean v City of New York, 12 NY3d 194, 203 [2009]). Accordingly, “even if a plaintiff establishes all elements of a negligence claim, a state or municipal defendant engaging in a governmental function can avoid liability if it timely raises the defense and proves that the alleged negligent act or omission involved the exercise of discretionary authority” (id. at 76; see also McLean at 202). In contrast, when performing a proprietary function, the governmental entity is generally subject “to the same duty of care as private individuals and institutions engaging in the same activity” (Schrempf v State of New York, 66 NY2d 289, 294 [1985]).
*586 “A governmental function generally is defined as one ‘undertaken for the protection and safety of the public pursuant to the general police powers’ ” (Murchinson v State of New York, 97 AD3d 1014, 1016 [3d Dept 2012], quoting Balsam v Delma Eng’g Corp., 90 NY2d 966, 968 [1997]). A proprietary function is one in which “governmental activities essentially substitute for or supplement traditionally private enterprises” (Sebastian v State of New York, 93 NY2d 790, 793 [1999] [internal quotation marks omitted]).
“ ‘A governmental entity’s conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions . . . [and] any issue relating to the safety or security of an individual claimant must be carefully scrutinized to determine the point along the continuum that the State’s alleged negligent action falls into, either a proprietary or governmental category’ ” (Matter of World Trade Ctr. Bombing Litig., 17 NY3d 428, 446 [2011], cert denied 568 US —, 133 S Ct 133 [2012], quoting Miller v State of New York, 62 NY2d 506, 511-512 [1984]). In performing this analysis, a court must examine “the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred . . . , not whether the agency involved is engaged generally in proprietary activity or is in control of the location in which the injury occurred” (Miller at 513 [internal quotation marks omitted]; see also Matter of World Trade Ctr. Bombing Litig. at 447).
The dissent believes that the City must be held liable for the supervisor’s failure to warn her of the dangerous condition in the transverse, or for his negligently waving her into a place of danger, because those acts were integrally related to the pothole repair undertaken by the City in a proprietary capacity. However, at the time of plaintiffs accident, the repair work had not begun, and the supervisor was engaged in traffic control, which is “a classic example of a governmental function undertaken for the protection and safety of the public pursuant to the general police powers” (see Balsam v Delma Eng’g Corp., 90 NY2d at 968; see also Santoro v City of New York, 17 AD3d 563 [2005]; Devivo v Adeyemo, 70 AD3d 587 [1st Dept 2010]). Thus, the City is entitled to governmental function immunity because the specific act or omission that caused plaintiffs injuries was the supervisor’s discretionary decision to allow plaintiff to proceed since his crew had not completed its preparations for the road work, and not the City’s proprietary function in maintaining the roadway (see Clinger v New York City Tr. Auth., 85 NY2d 957, 959 [1995]; Kadymir v New York City Tr. Auth., *587 55 AD3d 549, 552 [2d Dept 2008]). When plaintiff encountered the supervisor, he was not at the entrance of the transverse to repair potholes; the repair was to take place later, under the second overpass, which, according to plaintiffs boyfriend, was a “good distance” away. The fact that the supervisor was a DOT employee and not a police officer is of no consequence. Controlling traffic is a governmental function.
Plaintiff also argues that the jury’s finding that the City had not received written notice of the roadway condition was against the weight of the credible evidence. Plaintiff asserts that there was written notice of the defect as far back as July 13, 2005, nearly four months before her accident.
Administrative Code of City of NY § 7-201 (c) (2) requires plaintiffs to show that the City received prior written notice of the alleged defect to maintain an action. The notice must designate the specific defect alleged in the complaint (see Belmonte v Metropolitan Life Ins. Co., 304 AD2d 471, 474 [1st Dept 2003]), and the awareness of one defect in the area is inadequate notice of another defect that caused the accident (see Roldan v City of New York, 36 AD3d 484 [1st Dept 2007]).
Weighing the documentary evidence related to the purported written notice, which addressed defects in the eastbound lane, in conjunction with the testimony of plaintiff and the supervisor with respect to the location of the pothole that caused the accident, the jury could rationally conclude that the City did not have the requisite prior written notice of the specific roadway defect (see Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]). The supervisor testified at his deposition that he remembered that the subject pothole was in the westbound, not the eastbound, lane of the transverse, and that the memory was “frozen” in his mind. Plaintiff testified that she was closer to the yellow line than her boyfriend while traveling in the eastbound lane and had just moved to the left when she encountered the pothole. The jury was free to resolve the conflicts in the evidence and the issues of credibility in defendant’s favor (see McDermott v Coffee Beanery, Ltd., 9 AD3d 195, 206, 207 [1st Dept 2004]).
We have considered plaintiffs other arguments and find them unavailing. Concur — Tom, J.P, Andrias, Saxe and DeGrasse, JJ.