Rosenblatt v State of New York (2024 NY Slip Op 50325(U))

[*1]

Rosenblatt v State of New York

2024 NY Slip Op 50325(U)

Decided on March 27, 2024

Court Of Claims 

Vargas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 27, 2024
Court of Claims 

Robert Rosenblatt, Esq. and A. Balsamo & Rosenblatt, P.C., Claimants,

against
The State of New York,[FN1] Defendant.

Claim No. 139014

For Claimants:
Robert Rosenblatt, Esq., Pro Se
For Defendant:
Hon. Letitia A. James, Attorney General
of the State of New York
By: Antonella Papaleo, Esq., Assistant Attorney General

Javier E. Vargas, J.

Notice of Motion, Affirmation & Exhibits Annexed 1-4
Affirmation in Opposition & Exhibits Annexed 5-6
Affirmation in Further Support of Motion to Dismiss 7

Upon the foregoing papers and for the following reasons, the Motion by Defendant State of New York 
(hereinafter "State") to dismiss the Claim by Claimants Robert Rosenblatt, Esq. and A. Balsamo & Rosenblatt, P.C. (hereinafter "claimants"), is granted and the Claim hereby dismissed.
On April 4, 2023, claimants, who are landlord-tenant attorneys, filed the instant Claim seeking to recover damages against the State and its Attorney General, alleging causes of action for violation of their constitutional rights, violation of their due process rights, intentional [*2]infliction of emotional distress, slander, defamation, abuse of process and tortious interference, purportedly arising from an investigation into the claimants' lawfirm's practices in representing landlords in eviction and non-payment proceedings in Housing Court (see id. at 6, ¶ 27). Specifically, the claimants allege that the Attorney General has unfairly investigated and initiated frivolous litigation against them out of "a deep animosity" by the head of the Attorney General's Housing Unit, Assistant Attorney General Brent Meltzer, Esq., who "has been lying-in-wait to exact revenge for whatever reason he has for his enmity toward" them (id. at 4, ¶ 6). The Claim goes on to vaguely discuss an ongoing Supreme Court case which originated three years ago when claimants were "tricked by a landlord's agent [to] settle a case in federal court to make victim tenants whole," and where Mr. Meltzer had an "in" to investigate them for alleged wrongdoing (id. at 4, ¶ 7). At numerous times over the past two years, the claimants alleged that they have unsuccessfully requested for Mr. Meltzer to recuse himself from the pending matter, but that he has continued to target claimants to settle an "old score" thereby creating a conflict of interest (id. at 4, ¶ 9). 
Claimants then reference a Decision and Order (Engoron, J.) dated February 2, 2021, where the New York County Supreme Court partially granted their motion to quash a subpoena by the Attorney General seeking hundreds of files from claimants' cases (see id. at 4, ¶ 7; State of New York, by Letitia James, Attorney General v Balsamo Rosenblatt & Hall, P.C., Index No. 452576/2020, Sup Ct, NY County, Engoron, J., February 2, 2021). The Claim makes further allegations surrounding a proposed Consent Agreement related to the ongoing proceeding that Mr. Meltzer wanted them to sign, but they refused to sign (see id. at 4-5, ¶¶ 12 to 16).[FN2]
In a conclusory fashion, the claimants allege that the agreement placed them in a competitive disadvantage, that Mr. Meltzer refused to offer them the same terms and conditions as offered to 17 other firms, that the proposed consent was designed to put them out of business, and that Mr. Meltzer's actions were motivated by discriminatory and retaliatory animus against them (see id. at 5, ¶¶ 21, 23, 24). Upon refusing to sign the agreement, the claimants allege that Mr. Meltzer weaponized the Attorney General's Office in an "all- out assault against [the]m" (id. at 5, ¶ 17), including callously releasing press releases against them in an attempt to further harass, intimidate and destroy their law practice (see id. at 5, ¶ 19). Per claimants, this Claim accrued on January 27, 2023, when Kings County Supreme Court (Rothenberg, J.) denied their latest motion to disqualify Mr. Meltzer, and the acts took place in Civil Court in every county in the City of New York (see id. at 5, ¶¶ 25 to 26). As a result, claimants seek damages in the amount of $6,000,000. 
By Notice of Motion filed May 15, 2023, the State moves pre-answer to dismiss the Claim pursuant to Court of Claims Act §§ 8, 9 and 11, CPLR 3211(a)(1), 3211(a)(2), 3211(a)(5), 3211(a)(7) and 3211(a)(8). In a preliminary discussion, the State explains that while the Claim fails to provide any identifying details, it generally alludes to an ongoing civil case alleged to have been unfairly brought by the Office of the Attorney General initiated by Mr. Meltzer against [*3]claimants. First, the State argues that this Court does not have jurisdiction over individual persons such as Mr. Meltzer and Ms. James, but that, in any event, the State is immune from liability for the discretionary acts of the Attorney General and her assistants (see Affirmation in Support at 4 to 7, ¶¶ 9 to 14). Next, the State argues that claimants' causes of action for due process violations, constitutional violations and intentional infliction of emotional distress require dismissal, as the Court of Claims has no jurisdiction to hear and determine civil actions alleging Federal constitutional violations nor state constitutional claims where there are other remedies available to enforce claimants' rights. Furthermore, the State maintains that the Court of Claims is not an appellate court, and does not sit in review of Civil Court, or any Court, and the due process right available to claimants is their right to seek appellate review to challenge the judge's denial of his motion to disqualify Mr. Meltzer. 
In addition, the State contends that the Claim fails to satisfy the jurisdictional pleading requirements of Court of Claims Act § 11(b) by failing to identify the "time when" or place where" the Attorney General allegedly initiated the frivolous lawsuit or investigation that resulted in harm to claimants. The State argues, inter alia, that the Claim entirely fails to provide any factual detail whatsoever concerning the alleged slanderous press releases; no information was provided as to when the State initiated the investigation or issued subpoenas, requesting hundreds of documents; the specific case in which claimants made repeated requests for Mr. Meltzer to recuse himself, and how or when those requests were made; or when were the harassing press releases made and how many times they were made. Absent these details, the State is entirely unable to investigate the allegations in the Claim without being required to "ferret out" information and cannot ascertain the existence or extent of its liability. The State concludes that the lack of these details in the Claim is a defect of significant jurisdictional proportions which pervade all the allegations contained therein and requires the dismissal of the Claim as defective under Court of Claims Act § 11. 
By Affirmation in Opposition filed July 5, 2023, the claimants counter that the Court of Claims has jurisdiction over the Attorney General and its employees as absolute immunity does not apply to excuse Mr. Meltzer for commencing the investigations without cause and for using his current position and power to harm an old foe (see Affirmation in Opposition at 4, ¶ 10). Claimants then provide extensive arguments on the substantive and procedural aspects of his pending civil proceeding, and the applicability of Real Property Actions and Proceedings Law (RPAPL) and 15 USC § 1692 to debt collection practices (see Affirmation in Opposition at 6, ¶¶ 12 to 13). Claimants further argue that their action against the State for money damages due to violation of their federal and state constitutional rights can be brought in the Court of Claims. Moreover, the Claim is not in violation of the Court of Claims Act § 11(b), as they specifically addressed that the personal animosity by Mr. Meltzer existed for 15 years during their times in Housing Court in the City of New York. Tellingly, claimants specifically state that the issue began three years ago when Mr. Meltzer initiated the investigation, and two years ago when they requested his recusal from any investigation. Lastly, they argue that their causes of action for abuse of process, defamation, slander, and tortious interference with prospective business should be maintained (see id. at 9-13, ¶¶ 18 to 24).
In an Affirmation in Further Support of its Motion filed July 21, 2023, the State argues that the instant Claim is nothing more than a collection of un-actionable and unsupported claims [*4]brought about by claimants' displeasure with the fact that they are defendants in an unrelated action brought against the firm by the Attorney General. The State maintains that the instant Claim constitutes an improper attempt to collaterally attack the judgment of another court. Furthermore, the State argues that it cannot be held vicariously liable for Mr. Meltzer's alleged actions in purportedly using his position as a State officer to commence frivolous litigation based on a personal vendetta outside the scope of his employment. Upon reading all the papers herein, this Court agrees with the State.
"The Court of Claims has limited jurisdiction to hear actions against the State itself or actions naming State agencies or officials as defendants, where the action is, in reality one against the State - i.e., where the State is the real party of interest" (Borawski v Abulafia, 117 AD3d 662, 663 [2nd Dept 2014]). It possesses only such jurisdiction as the Legislature expressly confers upon it (see Ivey v State of New York, 138 AD2d 962 [4th Dept 1988]; Court of Claims Act § 9). That being said, the Court of Claims may not review the decisions of other courts and has no jurisdiction to intervene in ongoing Supreme Court matters or to review judicial ruling made in connection therewith (see Leonichev v NYC Civil Hous. Court, UID No. 2016-049-044 [Ct Cl, Weinstein, J., December 2, 2016]; Martocci v County of Ulster, UID No. 2001-028-557 [Ct Cl, Sise, J., September 6, 2001]). "'[B]ecause suits against the State are allowed only by the State's waiver of sovereign immunity and in derogation of the common law, statutory requirements conditioning suit must be strictly construed'" (Lichtenstein v State of New York, 93 NY2d 911, 913 [1999], quoting Dreger v New York State Thruway Auth., 81 NY2d 721, 724 [1992]; Correa v State of New York, 208 AD3d 847 [2d Dept 2022]).
On a Motion to dismiss a claim pursuant to CPLR 3211(a)(7), the court is required to accept the facts as alleged in the claim as true, accord claimants the benefit of every possible favorable inference, and determine only whether the facts as alleged fit with any cognizable legal theory (see Leon v Martinez, 84 NY2d 83, 87 [1994]; Gioeli v Vlachos, 89 AD3d 984 [2d Dept 2011]). Notwithstanding the favorable treatment of such pleading, bare legal conclusions with no factual specificity do not suffice to withstand a motion to dismiss for failure to state a cause of action (see Matter of Holterbosch, 216 AD3d 783 [2d Dept 2023]; Barnes v Hodge, 118 AD3d 633 [1st Dept 2014]).
Applying these principles to the matter at bar, the State has sufficiently established that the Claim is jurisdictionally defective and must be dismissed. Although claimants allege causes of action for constitutional and due process violations, intentional infliction of emotional distress, slander, defamation, abuse of process and tortious interference, the Claim provides only one accrual date for these multiple causes of action. Clearly disregarding the specificity requirement of Court of Claims Act § 11(b), claimants submit vague information, lacking dates of occurrence, and rants about deep animosity and disparate treatment toward them, allegedly committed by the Attorney General in the prosecution of the pending unrelated case. They delve into a discussion of the Consent Agreement they declined to sign, and links this refusal to sign the agreement to the pending litigation purportedly unleashed against them by the Attorney General.
Whilst the Claim asserts causes of action for violation of their constitutional rights and due process rights, the Court of Claims lacks subject matter jurisdiction to consider federal constitutional claims, given that the statutory basis for such claims, 42 USC § 1983, authorizes claims only against a "person" and the State "is not a person within the meaning of this statute" [*5](Kelly v State of New York, 206 AD3d 1309 [3d Dept 2022]; see Brown v State of New York, 89 NY2d 172, 185 [1996]; Leibovitz v State of New York, 81 Misc 3d 1218[A], 2023 NY Slip Op 51366[U] [Ct Cl, Vargas, J., December 13, 2023]). Inasmuch as the Claim can be construed as alleging a State constitutional claim, this narrow remedy may only be pursued where no other remedy is available to enforce claimants' rights (see Martinez v City of Schenectady, 97 NY2d 78, 83-84 [2001]; Lyles v State of New York, 2 AD3d 694, 695-696 [2d Dept 2003], affd 3 NY3d 396 [2004]). Here, claimants have numerous alternative legal remedies as reflected by the causes of action listed in the Claim, and they may elect to raise their constitutional claims in Federal Court or in the pending Supreme Court proceeding. Thus, these constitutional claims must be dismissed (see Franza v State of New York, 164 AD3d 971, 973 [3d Dept 2018], lv denied 32 NY3d 910 [2018]; Oppenheimer v State of New York, 152 AD3d 1006, 1008-1009 [3d Dept 2017]). 
In the same vein, claimants' cause of action for intentional infliction of emotional distress must be dismissed as it is well settled that causes of action against the State for intentional infliction of emotional distress are prohibited against public policy (see Peterec v State of New York, 124 AD3d 858 [2d Dept 2015]; Afifi v City of New York, 104 AD3d 712 [2d Dept 2013]; Espino v State of New York, UID No. 2016-045-051 [Ct Cl, Lopez-Summa, J., October 6, 2016]). Being that as here, Mr. Meltzer and the Attorney General serve in an official capacity, public servants cannot be held liable for the temporary harm they may inflict while discharging their clearly official duties (see Sgambati v State of New York, UID No. 2001-013-002 [Ct Cl, Patti, J., February 27, 2001]).
Carefully reviewing the Claim, the causes of action for defamation and slander must be similarly dismissed as they have not been amply pled within the meaning of Court of Claims Act § 11(b) and CPLR 3016(a). "The elements of a cause of action for defamation are (a) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c) amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing special harm or constituting defamation per se" (Greenberg v Spitzer, 155 AD3d 27, 41 [2d Dept 2017]; see Bowen v Van Bramer, 205 AD3d 674 [2d Dept 2022]). It is an injury to one's reputation, either by written expression (libel) or oral expression (slander) (see Fedrizzi v Washingtonville Cent. School Dist., 204 AD2d 267 [2d Dept 1994]; American Med. & Life Ins. Co. v Crosssummit Enterprises, Inc., 27 Misc 3d 1210[A] [Sup. Ct., Nassau County, 2010]). A cause of action for defamation by slander must allege the particular words complained of as required by CPLR 3016(a), as well as the date when the statements were made (see Fox v State of New York, UID No. 2019-045-002-3 [Ct Cl, Lopez-Summa, J., April 15, 2019]; Cutie v State of New York, UID No. 2018-032-044 [Ct Cl, Hard, J., August 13, 2018]).
Here, nothing in this Claim sound in defamation or slander, as it only sets forth conclusory and general assertions, and claimants only quoted one statement that Mr. Meltzer made about the "wild west" when he met with claimants' attorneys. Despite alluding to a press conference released by Mr. Meltzer and the Attorney General against him, claimants provide no information about what statements were made or when this press conference occurred. Nor was a date affixed to any statement made by Mr. Meltzer or the Office of the Attorney General. 
Additionally, the cause of action for abuse of process must be dismissed. In order to set [*6]forth a cause of action for abuse of process, a claimant must prove three essential elements: regularly issued process either civil or criminal; an intent to harm without excuse or justification, and use of the process in a perverted manner to obtain a collateral objective (see Behrens v City of Buffalo, 217 AD3d 1589 [4th Dept 2023]; Brown v State of New York, UID No. 2008-044-521 [Ct Cl, Schaewe, J. March 8, 2008]). Again, claimants make vague and general assertions about a pending civil proceeding and conclusory statements about a proposed agreement that do not fall within the elements of abuse of process.
For the same reason, claimants' cause of action for a tortious interference with his business must be dismissed. The elements of the claim of tortious interference with business are: defendant's knowledge of a business relationship between the plaintiff and a third party; the defendant's intentional interference with the relationship; the defendant acted by the use of wrongful means or with the sole purpose of malice; and resulting injury to the business relationship (see Zetes v Stephens, 108 AD3d 1014 [4th Dept 2013]; Cutie Pharma-Care v The State of New York, UID No. 2018-032-044 [Ct Cl, Hard, J., August 13, 2018]). Here, besides general allegations that the State's lawsuit and proposed Consent Agreement were designed to put them out of business and in a competitive disadvantage, claimants have not pled any of the elements necessary for a tortious interference cause of action. 
It is clear from a review of the Claim that claimants seek in a roundabout manner to challenge Justice Rothenberg's denial of their motion to disqualify Mr. Meltzer. Indeed, claimants state that "the claim accrued on January 27, 2023, when the Honorable Judge Rothenberg denied my motion to disqualify Mr. Meltzer" (Claim at 5, ¶26). Instead of seeking to reargue their motion with Justice Rothenberg or appellate review of the decision, claimants elected to file the instant Claim, raising arguments about the proposed Consent Agreement and challenging the basis of the lawsuit filed against them in Supreme Court. As a court of limited jurisdiction, the Court of Claims cannot sit in appellate review of another court's decision (see Davis v Bronx Sup. Ct. Civil Term, UID No. 2019-049-025 [Ct Cl, Weinstein J., July 25, 2019]; Kingston v State of New York, UID No. 2016-049-033 [Ct Cl, Weinstein, J., August 17, 2016]). 
Unequivocally, it appears here that Mr. Meltzer and the Attorney General's Office were acting in their capacity as prosecutors in the action brought against claimants in Supreme Court. In reality, the allegations in this Claim reflect a classic case of governmental immunity which continues to shield public entities from liability for discretionary actions taken during their performance of governmental functions (see Valdez v City of New York, 18 NY3d 69, 75-76 [2011]). Undeniably, where official action involves the exercise of discretion, the officer is not liable for the injurious consequences of that action even if resulting in negligence or malice (see McLean v City of New York, 12 NY3d 194, 203 [2009]).
Having failed to comply with the provisions of Court of Claims Act § 11(b), and having failed to state a cause of action, this Court finds that the Claim must be dismissed for lack of subject matter jurisdiction and for failure to state cognizable causes of action (see CPLR 3211[a][7]; Moreland v State of New York, 200 AD3d 1362 [3d Dept 2021]).
Based on the foregoing, the Court grants the State's Motion No. M-99430, and Claim No. 139014 is hereby dismissed. 
New York, New York
March 27, 2024
Hon. JAVIER E. VARGAS
Judge of the Court of Claims

Footnotes

Footnote 1: Although the Claim names as individual Defendants NYS Attorney General Letitia James and Assistant Attorney General Brent Meltzer, the caption has been amended sua sponte to reflect the State of New York as the only proper Defendant herein (see Court of Claims Act § 9).

Footnote 2: As per the proposed Consent Agreement, the claimants were required to conduct a due diligence search prior to commencing any new cases against a tenant, including reviewing the related Division of Housing and Community Renewal ("DHCR) registrations, in penalty of which they were required to pay a $5,000.00 fee for each violation.